**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**JACKSON TILE MANUFACTURING COMPANY, Respondent.**

No. 18032.

United States Court of Appeals Fifth Circuit.

Aug. 18. 1960.

* Of the Ninth Circuit, sitting by designation.

Morton Namrow, Atty., Thomas J. Mc-Dermott, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Stuart Rothman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Melvin Pollack, Atty., N.L.R.B., Washington, D. C., for petitioner.

Joe Jack Hurst, Wells, Thomas & Wells, W. Calvin Wells, III, Jackson, Miss., for Jackson Tile Mfg. Co.

Before RIVES, Chief Judge, and CAMERON and BROWN, Circuit Judges.

RIVES, Chief Judge.

In Jackson Tile Manufacturing Co. v. N.L.R.B., 5 Cir., 1959, 272 F.2d 181, this Court enforced in full a Board order based on findings that the respondent from March 1956 to January 1958, in a campaign to prevent organization of its plant by the union,[1] resorted to an informer system among its employees to obtain information concerning union activities and the identity of union adherents, and committed various unfair labor practices. The Board now petitions for enforcement of another order based on findings that the respondent further violated the act by discharging two employees because of their activities on behalf of the union.

■■ At the outset the respondent attacks the jurisdiction of the Board. The circumstances on which this attack is based are these. The Regional Director declined to issue a complaint in this case when first approached by the union. The union then applied to the General Counsel for a review of the Regional Director's action pursuant to Section 102.19 of the National Labor Relations Board Rules and Regulations, 29 U.S. C.A. Appendix.[2] The General Counsel never reviewed the decision of the Regional Director. Rather, the Regional Director reconsidered his prior decision and issued a complaint alleging the illegality of the dismissals here involved.

The respondent argues that once the appeal was taken to the General Counsel the Regional Director was powerless to act in the cause. Why this is so is not made clear. It would seem that the position must be based on some concept of jurisdiction over the cause, which is lost when the appeal was filed. This concept, though relevant in a formal judicial system,[3] is inapposite in an administrative proceeding. Respondent has not shown any injury because of the procedure involved in this case. Moreover, the issue has been resolved against respondent-contestor by the Supreme Court in National Labor Relations Board v. Fant Milling Co., 1959, 360 U.S. 301, 302–305, 79 S.Ct. 1179, 3 L.Ed.2d 1243.

■■ Before going into the facts of this case, a statement of some general principles seems appropriate. In any section 8(a) (1) or 8(a) (3) discharge case the burden of establishing the illegality of the discharge is on the General Counsel. Once the "unlawful motive * * * [is] tentatively established," National Labor Relations Board v. Ferguson, 5 Cir., 1958, 257 F.2d 88, 93, the employer is called upon to put in proof in rebuttal, or to offer an alternative reason for the firing. It is then for the trier of fact to test the force of the employer's explanation and resolve the issue. Ibid. Only if "the Employer's explanation for the discharges * * * [is] so overwhelming that it [makes the] contrary evidence [presented by the General Counsel] unacceptable as a matter of law," can we hold that the Board's findings are not supported by substantial evidence on the record as a whole. Id., at page 92.

1. United Glass and Ceramic Workers of North America, AFL–CIO–CLC.

2. "Sec. 102.19 Review by the general counsel of refusal to issue. If, after the charge has been filed, the regional director declines to issue a complaint, he shall so advise the parties in writing, accompanied by a simple statement of the procedural or other grounds. The person making the charge may obtain review of such action by filing a request therefor with the general counsel in Washington, D. C., and filing a copy of the request with the regional director, within 10 days from the service of the notice of such refusal by the regional director. The request shall contain a complete statement setting forth the facts and reasons upon which the request is based."

3. Cf. 7 Moore, Federal Practice, Paragraph 60.30[2] at n. 2.

■ The General Counsel made out a prima facie case when he established: (1) that the employer was engaged in a campaign to prevent the organization of its plant during the period when these two employees were discharged;[4] (2) that the two employees whose discharges are before us were leaders in the union's drive to organize the plant and that respondent knew of the union activities of these two employees; (3) when he introduced evidence, credited by the hearing examiner, that the company's personnel director was "out to get" the employees Cook and Foster.[5] These factors, we think, were sufficient to establish the illegality of the discharges in the absence of an explanation by the employer which was "so overwhelming that it made this contrary evidence unacceptable as a matter of law." National Labor Relations Board v. Ferguson, supra, at page 92.

■ The employer alleges that Foster's discharge was for failure to follow instructions, which led to the destruction of company property. There is no dispute that machinery operated by Foster was damaged. The sole question was whether Foster had failed to oil the machine or open the "rabbit ears" which allow the oil to flow into the machine. The hearing examiner resolved the conflict in the testimony in favor of Foster. Fact-finding is the statutory sole responsibility of the Board. National Labor Relations Board v. Ferguson, supra, at page 90. Our function is not to "credit or discredit conflicting versions of factual events * * * *." National Labor Relations Board v. McGahey, 5 Cir., 1956, 233 F.2d 406, 409. Thus, the proof shows that Foster did oil his machine and open the "rabbit ears"—yet his dismissal was alleged to be for failure to do these things. We cannot say that the employer's explanation has overwhelmed the inferences to be drawn from the General Counsel's proof so as to make them unacceptable as a matter of law.

Cook was discharged "because of talk and actions against the Company" and other employees and "because of his failure to prove the charges he made." The surrounding circumstances were as follows. On July 16, 1957, Foreman Hawk approached Cook at the latter's machine, and said: "Cook, you've got a lot of friends in your department, haven't you?" When Cook answered, "Well, I hope so," Hawk continued: "Well, I thought I would tell you that some of the employees in your department are signing statements against you that you are violating company rules— soliciting on company time." Cook denied that he had violated the company's no-solicitation rule and asked Hawk to name his accusers so that he could con-

---

4. This campaign included (a) resort to an informer system among the employees to obtain information concerning union activities and the identity of union adherents; (b) engaging in surveillance of union meetings; (c) interrogating employees concerning their union views; (d) interfering with and obstructing the Board's investigatory process; (e) threatening employees with economic reprisal if they engaged in union activities; (f) instructing foremen to "watch out" for union solicitation in the plant and to discharge those employees active in such solicitation; (g) discharging a supervisory employee because of his unwillingness to commit further unfair labor practices on its behalf; and (h) discharging four employees because of their union activities. A background of employer animosity to the union has long been considered a crucial factor in determining whether a discharge violates the Act. National Labor Relations Board v. Servel, Inc., 7 Cir., 1945, 149 F.2d 542; National Labor Relations Board v. Laister-Kauffmann Aircraft Corp., 8 Cir., 1944, 144 F.2d 9.

5. Personnel Director Newman is credited with having said to one Smith that he wished Foster and Cook (the employees whose discharges are involved in the case at bar) would solicit "on company time * * *" Such solicitation would have been cause for discharge under the company's plant rules. In May or June 1957, in a conversation with Foreman Graves, Personnel Director Newman remarked that he knew Cook was an active union man and that he would "give his right arm" to get him out of the plant.

front them and deny their false statements. Hawk turned and walked off without replying.

That evening Cook sent the company the following registered letter:

"Mr. James G. Newman,
Personnel Manager
Jackson Tile Manufacturing
Company
Jackson, Mississippi
Dear Mr. Newman:
    "This morning I was told by Foreman Hawks that two or three employees in the Glaze Application Department was willing to swear that I had solicited them for membership in the union. This is a deliberate lie as I have strictly observed all plant rules and I have been very careful to refrain from talking union during working hours. *It is obvious that employees have been questioned and urged to make these false statements against me. Therefore not only are these persons lying but are part of a plan to coerce and intimidate me.*
    "As you know, I have discussed with you in person certain threats made by agents of the company that I was to be discharged for my activity and membership in the union. I would appreciate again the opportunity to discuss this matter with you in the hopes that this matter can be cleared up.
    "You are aware and probably know that I am a member of the Union. Being a member of the union is a legal right which the company cannot for long deny me or any other employee. As a member of the union I have been instructed by union representatives not to solicit union membership during working hours, this advice I have followed to the letter.
    "My purpose in calling this matter to your attention is to see to it that my rights as an American are not denied me by threats, intimidation, coercion, and discrimination.

"As an employee and a member of the union I invite your cooperation to make more tile and less trouble.
                "Yours truly,
                 /s/
                    Grady Cook
"cc: National Labor Relations Board
    Fifteenth Region
    820 Lowich Building
    2026 St. Charles Ave.
    New Orleans 13, Louisiana"
(Emphasis supplied.)

The next afternoon, Cook was summoned to Personnel Manager Newman's office and questioned at length by the company's attorney concerning his letter. At Cook's request, Newman sent for Foreman Hawk. Hawk admitted that he might have asked Cook "how his machine was running or something like that," but denied making the statement attributed to him by Cook in the letter. The company attorney then asked Cook if he was calling Hawk a liar and Cook answered, no, that he "wasn't calling Mr. Hawk a liar, but it was obvious that someone was telling a lie, the employees who were signing statements against [him]."

Before work the following morning, Cook was again summoned to Newman's office and asked by Newman to retract his letter. Cook refused to do so. Newman then referred to Cook's complaint on June 20, 1957, concerning reports that respondent was seeking an excuse to discharge him and Foster, and said: "Grady, if you can't tell me who the people was that told you the Company was after you, it looks like we are going to have to let you go." Cook refused to name his informants because the reports had been given him in confidence. The meeting ended when Newman advised Cook that he was indefinitely suspended until he retracted his letter or substantiated the charges he had made.

The trial examiner found that Foreman Hawk made the July 16 statement to Cook. The trial examiner also found that "Cook had not in fact violated the Respondent's no-solicitation rule."

Therefore, reasoned the trial examiner, Cook was "justified in assuming from Hawk's declaration that employees were signing statements accusing him" of violating the no-solicitation rule; "that the Respondent, on the basis of false evidence, was seeking, or at least considering, discriminatory action against him. From Hawk's remarks, Cook could also reasonably infer that if employees were willing falsely to swear that he had violated the no-solicitation rule, the employees must have been questioned by management representatives and prompted to do so. Of course, if Hawk's assertions were untrue, the very making of them reflected a coercive design. In any event, Cook was warranted in concluding from what Hawk said to him that Respondent was seeking to restrain him in the exercise of his statutory rights. In effect, Cook's letter did no more than call these matters to the Respondent's notice." [6] Stated in brief, the hearing examiner's theory was that the letter was written by Cook in an effort to protect his Section 7 right to engage in organizational activities. Thus, it could not be made grounds for dismissal without violating Section 8(a)(1) of the Act, 29 U.S.C.A. § 158(a)(1).

 It is clear beyond dispute that employees have the right to organize for their mutual aid and protection. The free exercise of this right by Cook was impaired when he learned from Hawk that employees were swearing that he engaged in activity which could result in his discharge. Cook had the right to request an inquiry to discuss with management the nature of these statements being made against him. In addition, the letter contained a strong, though not intemperate, statement of what Cook's position was concerning the charges of violation of the no-solicitation rule. The record indicates that the position which Cook would take was reasonable when viewed against the background of the employer's antiunion activity—including

discriminatory discharges and the warning which Cook had received that the employer was seeking an excuse to discharge him. We sustain the Board's ruling that the Act protects the right of one of the principal proponents of organization to request an investigation where he has been informed that he is being charged with activities which would make him subject to dismissal, and which he in good faith believes to be false, and that dismissal because of the exercise of that right violates Section 8(a)(1) of the National Labor Relations Act. The Board's order is

Enforced.

CAMERON, Circuit Judge, dissents.

---

6. This is not a case where the letter was "so disrespectful of the employer as seriously to impair the maintenance of dis-

cipline * * * *." National Labor Relations Board v. Blue Bell, Inc., 5 Cir., 1955, 219 F.2d 796, 798.