**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**ZELRICH COMPANY, Respondent.**

**No. 21482.**

United States Court of Appeals
Fifth Circuit.

May 11, 1965.

Rehearing Denied June 22, 1965.

Thomas Canafax, Jr., Atty., N. L. R. B., Marcel Mallet-Prevost, Asst. Gen. Counsel, N. L. R. B., Dominick L. Manoli, Associate Gen. Counsel, N. L. R. B., Washington, D. C., Arnold Ordman, General Counsel, Allison W. Brown, Jr., Anthony J. Obadal, Attys., N. L. R. B., for petitioner.

Warren Whitham, Dallas, Tex., for respondent.

Before BROWN and BELL, Circuit Judges, and HUNTER, District Judge.

HUNTER, District Judge.

The National Labor Relations Board, having found respondent guilty of unfair labor practices, seeks enforcement of its Order pursuant to Section 10(e) of the Labor Management Relations Act of 1947, 29 U.S.C.A. § 160(e).[1] On the factual record, the Board concluded that respondent violated Section 8(a) (1) of the Act by interrogating its employees concerning their union activity and by threatening them with loss of benefits should the union win the election; and that respondent violated section 8(a) (3) and (1) of the Act by discharging Waites, the leading union adherent, because of his union activity, and by withholding the 1962 Christmas bonus. The Board further concluded that the representation election conducted among respondent's employees was valid, and that respondent violated Section 8(a) (5) and (1) of the Act by unilaterally withholding the Christmas bonus, by unilaterally granting wage increases and by specifically refusing to bargain with the Union at a time when the Union was entitled to recognition as the collective bargaining representative of the employees.

The Board's order directs that respondent cease and desist from engaging in the unfair labor practices found; that respondent offer Norman Waites immediate and full reinstatement and make him whole for any loss of earnings which he may have suffered as a result of his wrongful discharge with interest thereon; that respondent pay to its employees the 1962 Christmas bonus which it wrongfully withheld, such payment to be made in accordance with the formula used by respondent in determining bonuses in preceding years; and that respondent bargain upon request with the Union. The order further directs respondent to post the usual notices (R. 138, 112).

Our review is narrowly proscribed by Section 10(e) to a determination of whether the findings of the Board are supported by substantial evidence on the record considered as a whole.[2]

No useful purpose would be served in reciting the detailed facts upon which the Board could properly find that the company violated Section 8(a) (1) by interrogating and coercing its employees. The statements made by Johnson in his interrogation of Waites, and the statements made by President Rich in his speech to the employees, in and of themselves might possibly be non-coercive; but viewed in its entirety, there is sufficient evidence of a background of union hostility in context with the statements to bring them within the proscription of Section 8(a) (1) of the Act. NLRB v. Griggs Equipment Company, Inc., 5 C.C.A., 307 F.2d 275; NLRB v. Harbison-Fischer Manufacturing Company, 5 C.C.A., 304 F.2d 738; NLRB v. International Furniture Company, 5 C.C.A., 199 F.2d 648.

There is substantial evidence to support the Board's finding that the respondent violated Section 8(a) (3) and

1. The Board's decision and order are reported at 144 NLRB No. 120.

2. Universal Camera Company v. NLRB, 1951, 340 U.S. 474, 71 S.Ct. 456, 95 L. Ed. 456.

(1) of the Act by withholding the 1962 Christmas bonus from its employees. Respondent had paid a Christmas bonus for the five preceding years. It was only discontinued in 1962, after a majority of the employees voted for the union. The Board found that the bonus had become an "integral part" of respondent's compensatory structure. We agree. On December 13, 1962, the day before the election, the President of the company warned the employees that they might lose certain benefits which the company was then "voluntarily" granting them if they were to vote for the union. After a majority of the employees, the following day, voted for union representation, respondent was faced with the question of what to do about the annual Christmas bonus. A decision was made to withhold this payment from the employees. It is significant that respondent offered no explanation to its employees as to why it was discontinuing the payment of the Christmas bonus. As the Board noted, "there was no evidence that respondent's financial condition was worse in December of 1962 than it was in preceding years when the bonus was given." In view of all the circumstances the Board could reasonably find as it did, that "the bonus was withheld for the purpose of discouraging membership in the union, and as retaliation for the employees' majority vote for the union." There is no merit to respondent's contention that the withholding of the bonus was not discriminatory within the meaning of Section 8(a) (3) because both "pro-union" and "anti-union" were affected. Majestic Molded Products, Inc. v. NLRB, 2 C.C.A., 330 F.2d 603; and NLRB v. Nabors, 5 C.C.A., 196 F.2d 272.

Respondent insists that Waites should not be re-instated and made whole for any loss of earnings, because he threatened a fellow employee and created a general air of hostility toward anti-union employees.

■ Waites was a trusted employee of long standing. His job as a crane operator was a responsible one requiring skill and care. That he was entrusted with such a position for approximately four years and that he received two wage increases during his tenure indicates that respondent had confidence in Waites' ability. Waites, however, became the leading union adherent in the plant. It was Waites who first propounded the plan for unionization, who first made contact with the Union and who arranged the first meeting at which the union representative was introduced to the employees. At the November 2 meeting, after President Rich had expressed his opposition to the union, it was Waites who acted as spokesman for the employees and questioned Rich about a pay raise and trucking assignments. Thereafter, precipitously, at the height of the pre-election campaign period, and shortly before the election, Waites was removed from his job as crane operator, and was made to work at the stacking table, the most physically difficult and menial job in the plant. Then after several days in this trying and burdensome job, Waites, without warning or admonition, was fired for, as he was told, "putting out threats." The statements made by Waites and his actions in and of themselves might have been coercive, but the Board, in agreement with the trial examiner, found that the reason assigned by respondent for the discharge was a pretext, and that the real reason was Waites' union activities. On the record as a whole we cannot say as a matter of law that the finding in that respect was wrong. NLRB v. Baker Hotel of Dallas, Inc., 311 F.2d 528, 5 C.C.A.; NLRB v. Transport Clearings, Inc., 311 F.2d 519, 5 C.C.A.; NLRB v. Griggs Equipment Company, Inc., 307 F.2d 275, 5 C.C.A.; NLRB v. Dell, 283 F.2d 733, 736, 5 C.C.A.; NLRB v. Jackson Tile Manufacturing Co., 282 F.2d 90, 5 C.C.A.; Southern Furniture Manufacturing Co. v. NLRB, 194 F.2d 59, 5 C.C.A., cert. denied 343 U.S. 964, 72 S.Ct. 1057, 96 L.Ed. 1361.

■ Zelrich concededly refused to recognize and bargain with the union. They seek to justify refusal on the argument that the election of December 14th

is null and void because Waites was permitted to act as a union observer. The Supreme Court has made it clear that in representation proceedings "[t]he control of the election proceeding, and the determination of the steps necessary to conduct that election fairly were matters which Congress entrusted to the Board alone." NLRB v. Waterman S.S. Corp., 309 U.S. 206, 60 S.Ct. 493, 84 L.Ed. 704. There is no evidence that Waites' presence created an environment of tension of coercion such as to preclude employees from exercising a free choice. For conduct to warrant setting aside an election, not only must that conduct be coercive, but it must be so related to the election as to have had a probable effect upon the employees' actions at the polls. The presumption is that ballots cast under the safeguards provided by Board procedure reflect the true desires of the participating employees. The election was not improper and was not invalidated by the fact that Waites was a watcher. The union was properly certified by the Board as the collective bargaining agent, and accordingly, respondent's refusal to bargain with the union violated Section 8(a) (5) and (1) of the Act. Respondent further contends that the Board's action in failing to hold a hearing on the issue of Waites' eligibility to act as an election observer deprived it of its right to due process. We disagree.

In NLRB v. O.K. Van Storage, Inc., (5 Cir. 1961) 297 F.2d 74, 76, the necessity for granting a hearing on objections to an election was under consideration. The court noted that the Act did not require such a hearing, and stated:

"The Board nonetheless makes it a practice to hold post-election hearings on objections to elections, but in keeping with the spirit of the Act does so only when it appears that the allegations relied on to overturn the election have a basis in law and that there is evidence to support them. The opportunity for protracted delay of certification of the results of representation elections which would exist in the absence of reasonable conditions to the allowance of a hearing on objections is apparent. An objecting party who fails to satisfy such conditions has no cause for complaint when and if his demand for a hearing is denied."

In reviewing orders the principal question in relation to the failure of the Board to hold a hearing on the issue of Waites' eligibility is whether or not this failure constituted an abuse of discretion. There was no abuse of discretion here.

The Board found that Section 8(a) (5) was also violated by respondent's unilateral withholding of the 1962 Christmas bonus and the granting of a general wage increase in January of 1963. It cannot be doubted that by taking these actions without notification to or consultation with the properly designated majority representation of its employees, respondent violated the proscription of Section 8(a) (5). NLRB v. Katz, 369 U.S. 736, 82 S.Ct. 1107, 8 L.Ed.2d 230; NLRB v. American Aggregate, Inc., 305 F.2d 559 (5 C.C.A.).

A decree will be entered enforcing the order of the Board.