**DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR, Petitioner,**

**v.**

**DRUMMOND COAL COMPANY and Miles Cornelius, Respondents.**

No. 86–7512.

United States Court of Appeals, Eleventh Circuit.

Nov. 2, 1987.

Michael J. Denny, Thomas L. Holzman, Ellen L. Beard, U.S. Dept. of Labor, Washington, D.C., for petitioner.

A. Inge Selden, III, H. Thomas Wells, William S. Dodson, Jr., Birmingham, Ala., for respondents.

Before TJOFLAT and ANDERSON, Circuit Judges, and HENDERSON, Senior Circuit Judge.

ANDERSON, Circuit Judge:

Though clouded in procedural obscurity, the parties' basic dispute is over who should pay Miles Cornelius' black lung benefits—the Black Lung Disability Trust Fund, established by the United States [1] or Drummond Coal Company, Cornelius' former employer. Because the Benefits Review Board correctly determined that the Trust Fund bears liability for Cornelius' benefits, we deny the Director's Petition for Review.

1. The trust fund is represented in this dispute by the Director of the Department of Labor's Office of Workers' Compensation Programs ("Director").

2. Deputy commissioners are officials within the Office of Workers' Compensation Programs, U.S. Department of Labor, with specific responsibilities for the development of evidence and administration of claims under the Longshore Act and the Black Lung Benefits Act. *See* 33 U.S.C. §§ 939, 940; 20 C.F.R. § 725.101(11).

3. In pertinent part, this statute reads as follows: Upon his own initiative, or upon the application of any party in interest ... on the ground of a change in conditions or because of a

## I. BACKGROUND

### A. *Statutory and Regulatory Scheme*

This Petition for Review concerns a claim for benefits under Title IV of the Federal Coal Mine Health and Safety Act of 1969, as amended, 30 U.S.C. § 901, *et seq.* ("Black Lung Benefits Act"). The Black Lung Benefits Act provides that black lung claims are to be processed by the Secretary of Labor in accordance with the procedural provisions of the Longshore and Harbor Workers' Compensation Act ("Longshore Act"). 30 U.S.C. § 932(a). Section 19 of the Longshore Act, 33 U.S.C. § 919, prescribes the basic claims procedure: claims are filed with a deputy commissioner [2] who notifies all interested parties, investigates the claim, and orders a hearing at the request of any interested party. 33 U.S.C. §§ 919(a)—919(c). Hearings are then held before an administrative law judge ("ALJ"), pursuant to the procedural requirements of the Administrative Procedures Act. 33 U.S.C. § 919(d). Section 21 of the Longshore Act establishes the procedure for review and enforcement of compensation orders outlining the jurisdiction and role of the Benefits Review Board, which hears appeals from determinations made by administrative law judges, and of the courts of appeal which may hear petitions for review of final decisions of the Benefits Review Board. 33 U.S.C. § 921.

The statutory provision most relevant to this appeal is § 22 which governs the modification of awards.[3] This section authorizes the deputy commissioner to review

mistake in a determination of fact by the deputy commissioner, the deputy commissioner may, at any time prior to one year after the date of the last payment of compensation, whether or not a compensation order has been issued, or at any time prior to one year after the rejection of a claim, review a compensation case ... in accordance with the procedure prescribed in respect of claims in section 919 of this title, and in accordance with such section issue a new compensation order which may terminate, continue, reinstate, increase, or decrease such compensation, or award compensation.
33 U.S.C. § 922.

and modify a compensation award either on his own initiative or at the request of a party. The deputy commissioner may issue a new compensation order "on the ground of a change in conditions or because of a mistake in a determination of fact by the deputy commissioner." 33 U.S.C. § 922.

The Department of Labor has promulgated extensive procedural rules regulating the processing and adjudication of black lung claims. 20 C.F.R. Part 725. The claims are initially processed by a subdivision of the Department which employs the deputy commissioners. Though the deputy commissioner has principally administrative responsibilities, he may deny a claim by reason of abandonment and he is empowered to make an initial finding as to a claimant's eligibility. 20 C.F.R. §§ 725.-410–725.422. Any party that disagrees with the deputy commissioner's initial resolution may request a hearing before an ALJ or the deputy commissioner may refer a case for hearing on his own initiative. 20 C.F.R. § 725.451.

The modification regulation at issue in this case, 20 C.F.R. § 725.310, provides that "[u]pon his or her own initiative, or upon the request of any party on grounds of a change in conditions or because of a mistake in a determination of fact, the deputy commissioner may ... reconsider the terms of an award or denial of benefits." These modification proceedings may only be initiated before a deputy commissioner and are subject to all the same procedural requirements as an original claim. Thus, such modification orders are also subject to a review before an ALJ, before the Benefits Review Board, and ultimately on petition for review before this court. The deputy commissioner is specifically empowered, see 20 C.F.R. § 725.480, to modify any final decision (including that of an ALJ) if the conditions set forth in § 725.310 (i.e., a change of condition or a mistake of fact) are satisfied.

### B. Facts

The tangled procedural and legislative history of this case requires elaboration. Miles Cornelius originally filed his claim for black lung benefits in 1973. At that time, the Black Lung Benefits Act had rather stringent eligibility requirements. The deputy commissioner to whom Cornelius' claim was referred determined that he did not satisfy the then-existing eligibility requirements and administratively denied his claim in April 1976 and again in March 1977. Following the later denial Cornelius sought a hearing before an ALJ to review his claim.

However, before Cornelius' claim was scheduled for a hearing, Congress amended the Black Lung Benefits Act and authorized the Secretary of Labor to promulgate revised, less restrictive medical eligibility criteria. 30 U.S.C. § 902(f)(2). At the same time, Congress mandated that all previously denied and pending claims were to be reviewed in light of the 1977 amendments. 30 U.S.C. § 945. This right to review applied to all claims denied before March 1, 1978 or pending at that time. As a result of this reexamination requirement, Cornelius' claim was returned to a deputy commissioner. The deputy commissioner then determined that Cornelius was eligible to receive benefits under the revised eligibility criteria and that Drummond Coal Company, his former employer, was responsible for the payment of those benefits. Drummond Coal Company sought review of this determination in a hearing before ALJ James Howard.

While Cornelius' claim was pending before the ALJ, Congress again amended the Black Lung Benefits Act. Apparently, Congress realized that its liberalized eligibility rules had reopened thousands of pending claims which would not have met the earlier stringent requirements. Therefore, in order to relieve coal companies of this excessive retroactive burden, Congress provided that liability for claims denied before March 1, 1978 which were thereafter approved under the liberalized eligibility criteria should be transferred from coal operators to the Black Lung Disability Trust Fund. 30 U.S.C. §§ 902(i), 932(c)(2), 932(j)(3).

Implementing this new congressional mandate, ALJ Howard determined that

Cornelius' claim had been denied prior to March 1, 1978 and, consequently, entered an order transferring liability for this claim from Drummond to the trust fund. The Director did not appeal this determination of the ALJ to the Benefits Review Board as he was permitted to do.[4]

Cornelius' claim file was then returned by the ALJ to the deputy commissioner so that the deputy commissioner could authorize and begin benefit payments to Cornelius from the trust fund. Instead, the deputy commissioner reviewed Cornelius' file and came to the conclusion that the ALJ had relied upon a mistaken factual determination; in his view, Cornelius' claim had not been denied prior to March 1, 1978. Rather, he asserted, it had still been pending at that time. Relying on his modification authority under § 22 of the Longshore Act, 33 U.S.C. § 922, the deputy commissioner issued an order to the parties that they show cause why the ALJ's decision should not be modified by reinstating Drummond as the party liable for payment of Cornelius' benefits.[5]

While this show cause order was pending, ALJ Howard sua sponte vacated the deputy commissioner's order, reinstated his original determination, and imposed liability upon the trust fund.[6] The Director appealed this judgment to the Benefits Review Board and the Board affirmed the ALJ. The Board concluded that 33 U.S.C. § 922 does not permit a deputy commissioner to modify the order of an ALJ based upon a factual error made by the ALJ. Instead § 22 only allows a deputy commissioner to modify a prior order only if he later discovers that he has made a mistake of fact or that there has been a change of circumstance. Consequently, the Board concluded that the deputy commissioner had no authority to modify the ALJ's order based upon his perception that the ALJ had factually erred.

The Director now petitions for review of the Board's ruling and raises two issues. First, the Director contends that the ALJ lacked the "authority" to sua sponte vacate the deputy commissioner's show cause order and hence the case should be remanded to the deputy commissioner to complete the modification process which he began. Second, the Director contends that the deputy commissioner may use his modification powers to alter the final judgment of an ALJ when that judgment rests upon a factual error.

## II. DISCUSSION

Initially, we confront the Director's assertion that ALJ Howard lacked the authority or power to sua sponte vacate the deputy commissioner's show cause order and reinstate his original opinion transferring liability to the trust fund. The Director did not raise this issue before the Benefits Review Board. "Under general rules of appellate review, an appellate court should not overrule an administrative decision unless the administrative body erred against objections presented to it." *Taft v. Alabama By-Products Corp.*, 733 F.2d 1518, 1523 (11th Cir.1984) (citation omitted); *see also Myron v. Martin*, 670 F.2d 49, 51 (5th Cir.1982). Where, however, as in this case, the unvoiced objection asserts that the administrative body lacked jurisdiction or authority to act as it did, the objection is quasi-jurisdictional in nature and is not waived by a failure to raise the issue below. *United States v. L.A. Tucker Truck Lines*, 344 U.S. 33, 38, 73 S.Ct. 67, 69, 97 L.Ed. 54 (1952) (order outside agen-

---

**4.** The Director explains this failure as a clerical error, contending that the case file was mistakenly lost and closed when the attorney handling the case left the office and took another job. For purposes of this decision, we may assume that the Director's failure to appeal was in good faith.

**5.** The parties, of course, dispute whether any error was, in fact, made by the ALJ and whether Cornelius' claim had been finally denied prior

to March 1, 1978. For purposes of this decision, however, we need not resolve this issue.

**6.** This order read, in full:
    The Order of Darryl E. Ratliff, Deputy Commissioner, received in this Office on June 27, 1983 is hereby set aside for the reason that Deputy Commissioner Ratliff has no jurisdiction in this matter, and the Order of April 1, 1982 is hereby reinstated and reaffirmed.
Record on Appeal, vol. 1 at 39.

cy's jurisdiction is one that "even in the absence of timely objection ... should be set aside as a nullity"); *First American Bank v. Dole*, 763 F.2d 644, 649 (4th Cir. 1985) (administrative agency's lack of power or jurisdiction not waived by failure to raise below); *Railroad Yardmasters v. Harris*, 721 F.2d 1332, 1338 (D.C.Cir.1983) (same). Consequently, even though the Director did not raise an objection to ALJ Howard's action before the Benefits Review Board, we think the issue is properly presented to us.

■ Though we agree with the Director that the issue is properly before us, we find, nonetheless, that the Director's argument that ALJ Howard was without authority to vacate the deputy commissioner's show cause order is without merit. This circuit has long noted that strict concepts of jurisdiction "though relevant in a formal judicial system [are] inapposite in an administrative proceeding." *NLRB v. Jackson Tile Manufacturing Co.*, 282 F.2d 90, 92 (5th Cir.1960) (footnote omitted).[7] In reviewing asserted "jurisdictional" flaws in an administrative proceeding, the touchstone for analysis must be whether the party complaining of the faulty procedures has been injured by the process adopted by the administrative officers. *Id.* We cannot conclude that the Director has been prejudiced by the procedures adopted by the ALJ below. It certainly is the case that the issue presented to us on the merits is fully and fairly developed by the parties. Presentation of this issue to the deputy commissioner could in no way have aided our analysis of the legal issue presented.

Moreover, the logic of any adjudicative system must permit superior adjudicative authorities the power to enforce their decisions. *Cf. Starrett v. Special Counsel*, 792 F.2d 1246, 1252 (4th Cir.1986) (superior agency authority has authority to reject lower body's findings). Indeed, the logical extension of the Director's argument would be that a recalcitrant deputy commissioner could, in any circumstance, defeat the award of an ALJ merely by reopening the proceedings for modification and neglecting to complete them in a prompt manner.

Finally, the Department of Labor's own regulations authorize the exercise of inherent authority by an ALJ to command the enforcement of his orders. They permit an ALJ to "do all other things necessary to enable him or her to discharge the duties of the office." 20 C.F.R. § 725.351(b)(5). For these reasons, we conclude that ALJ Howard had ample authority to sua sponte vacate the deputy commissioner's modification order and reinstate his own determination.[8]

■ The Director next argues that the deputy commissioner is fully empowered by the Secretary's regulations to modify a preexisting compensation order entered by an ALJ. The regulations do indeed grant the deputy commissioner the authority to modify and award based upon a change in condition[9] or a mistake in a determination of fact. 20 C.F.R. § 725.310. By its terms, this regulation does not expressly limit the deputy commissioner's authority to modifications of his *own* errors of fact. The Director argues that this implies that the deputy commissioner has authority to modify facts as found by the ALJ or the Benefits Review Board. We reject the Director's argument because any such implication is weak indeed, violating the com-

---

7. This case was decided prior to the close of business on September 30, 1981, and is binding precedent under *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981).

8. The Director relies upon another regulation which, he contends, suggests that an ALJ has no authority over a claim "until the processing and adjudication of the claim by the deputy commissioner has been completed." 20 C.F.R. § 725.-450. The Director's reliance is, however, misplaced. Section 725.450 merely defines when a *party* shall have a right to a hearing. It is a party to the claim who may not proceed in hearings before an ALJ until the deputy commissioner has completed the adjudication of the claim. This rule, of course, does not speak in any way to an ALJ's power to terminate modification proceedings begun by the deputy commissioner in contravention of an earlier order.

9. For purposes of the Black Lung Benefits Act, a change in condition refers to a change in the employee's physical condition. *See General Dynamics Corp. v. Director,* 673 F.2d 23, 25 & n. 6 (1st Cir.1982) (per curiam).

mon sense notion that adjudication by the superior administrative tribunal is controlling, and because the statute itself is expressly inconsistent with the Director's argument.

Ordinarily, the Department's construction of the statute involved must be given deference, *see Chevron U.S.A. v. NRDC*, 467 U.S. 837, 843–44 & n. 11, 104 S.Ct. 2778, 2781–82 & n. 11, 81 L.Ed.2d 694 (1984); *accord Young v. Community Nutrition Institute*, 476 U.S. 974, 106 S.Ct. 2360, 2364, 90 L.Ed.2d 959 (1986). However, the implication the Director seeks to draw from the regulation cannot be given effect where, as here, it directly contravenes the express statutory language. As always, the courts must give effect to the unambiguously expressed intent of the legislative branch as that intent is reflected in the clear language of the statute. *Chevron*, 467 U.S. at 842–43, 104 S.Ct. at 2781–82; *see also American Tobacco Co. v. Patterson*, 456 U.S. 63, 68, 102 S.Ct. 1534, 1537, 71 L.Ed.2d 748 (1982) (the "starting point must be the language employed by Congress"); *Birmingham Trust National Bank v. Case*, 755 F.2d 1474, 1477 (11th Cir.1985) (same). Absent a clear legislative intent to the contrary, express statutory language is conclusive. *Case*, 755 F.2d at 1477.

In this case § 22 of the Longshore Act which grants the deputy commissioner his power to modify prior compensation awards is express. It says that a deputy commissioner may modify an award "on the ground of a change in conditions or because of a mistake in a determination of fact *by the deputy commissioner.*" 33 U.S.C. § 922 (emphasis added). By these very terms, Congress has expressly restricted the ambit of a deputy commissioner's authority. He may only correct his own prior factual errors, not those of any superior adjuicative authorities involved in the agency's determination of a benefits claim. *Cf. O'Keeffe v. Aerojet—General Shipyards, Inc.*, 404 U.S. 254, 92 S.Ct. 405, 30 L.Ed.2d 424 (1971) (permitting deputy commissioner to modify award based on his own mistake of fact). Nor is there any evidence of a contrary intent in the legislative history of the Act.[10] Because Congress has expressly spoken to the issue and rejected the Director's position, we are bound as well to conclude that a deputy commissioner may only modify a compensation award based upon his own mistaken factual determinations.[11]

Our conclusion is supported by a common sense perspective of the administrative process. When a finding of fact has been initially determined by the deputy commissioner, then appealed to the ALJ, litigated and determined, it violates the fundamental integrity of the administrative process to suggest that the deputy commissioner has the power to disregard the ALJ's determination and reinstate his own. We would not lightly read such a strange procedure into either statute or regulation, and surely will not in this case where the

10. The language of § 22 in fact appears to be the relic of a time when deputy commissioners had full adjudicative authority over benefits claims. That adjudicative authority has since been transferred to ALJs in order to satisfy the procedural requirements of the Administrative Procedures Act, leaving deputy commissioners principally with administrative functions. *Barthelemy v. J. Ray McDermott & Co.*, 537 F.2d 168, 172 (5th Cir.1976) (citing H.R.Rep. No. 1441, 92 Cong. 2d Sess. (1972)). In order to comport with congressional intent the vestigal power remaining with deputy commissioners must be construed as limited to that consistent with their retained administrative function (i.e., correcting their own factual errors or beginning the claims process anew when conditions have changed).

11. In *Verderane v. Jacksonville Shipyards, Inc.*, 772 F.2d 775 (11th Cir.1985), we said in dicta that "[s]ection 22 petitions are designed to prevent injustice resulting from the erroneous factfinding of officials such as an ALJ." *Id.* at 780. That dicta was not, however, essential to the holding of *Verderane* which concluded that § 22 was not available to save a litigant from the consequences of his own counsel's errors. Since *Verderane*'s dicta was not essential to its holding and since it directly contradicts the express statutory language of § 22, we disavow any suggestion *Verderane* might have made that the deputy commissioner's authority to modify awards permits him to modify an award based upon his belief that the ALJ has made a mistaken factual determination.

statute expressly rejects this strange notion.[12]

For the foregoing reasons, the Director's Petition for Review of the decision of the Benefits Review Board is denied.

PETITION DENIED.

12. The Director also relies upon the recent Sixth Circuit case, *Saginaw Mining Co. v. Mazulli*, 818 F.2d 1278 (6th Cir.1987). However, *Saginaw* stands only for the proposition that modification proceedings, when properly brought, must be initiated before the deputy commissioner. Though this is surely required by the regulations, it is simply not germane to a determination of what constitutes the proper scope of the deputy commissioner's modification authority. Though we might readily agree with the *Saginaw* court that all modification proceedings should be brought before the deputy commissioner, we would nonetheless conclude that the deputy commissioner has no authority to exercise that modification power to alter an ALJ's determination based upon his conclusion that the ALJ has factually erred.