**DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR, Petitioner,**

v.

**PEABODY COAL COMPANY and Earl Sisk, Respondents.**

No. 87–1239.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 5, 1987.

Decided Jan. 11, 1988.

Rehearing and Rehearing En Banc Denied March 4, 1988.

Bette J. Briggs, U.S. Dept. of Labor, Washington, D.C., for petitioner.

Jack N. VanStone, VanStone & Krochta, Evansville, Ind., W.C. Blanton, Ice, Miller, Donadio & Ryan, Indianapolis, Ind., for respondents.

Before CUMMINGS, RIPPLE and MANION, Circuit Judges.

CUMMINGS, Circuit Judge.

On June 4, 1974, Earl Sisk filed a claim with the Department of Labor for payment of black lung benefits under Part C of the Black Lung Benefits Act (the "Act"), 30 U.S.C. § 901 *et seq.* On May 3, 1976, a deputy commissioner, an official within the Department's Office of Workers' Compensation Programs, informally denied Sisk's claim. Sisk requested a hearing on the denial, but before such a hearing was scheduled Congress amended the Act to liberalize the eligibility criteria. 30 U.S.C. § 945. The amendment also established a procedure under which claims denied before March 1, 1978, or pending on that date, would be reviewed automatically. 30 U.S.C. § 945(b). Sisk's pending claim was reconsidered under the more liberal criteria and on October 10, 1980, a deputy commissioner found Sisk eligible to receive black lung benefits and notified Sisk's former employer, Peabody Coal Company ("Peabody"), of its liability for Sisk's benefits.

Peabody and its insurer, Old Republic Insurance Company, controverted liability and requested a hearing before an administrative law judge ("ALJ"). While the matter was still pending before a deputy commissioner, Congress amended the Act again. The liberalized eligibility requirements of the 1977 amendments had reopened thousands of denied and pending claims and resulted in the awarding of benefits to many employees who had received, or possibly would have received, nothing under the earlier more stringent criteria. This resulted in a tremendous retroactive economic burden on the coal companies. To relieve this burden, Congress provided that liability for claims denied before March 1, 1978, but later approved under the liberalized eligibility criteria should be transferred from the employer coal companies to the Black Lung Disability Trust Fund ("Trust Fund") established in the Treasury Department. 30 U.S.C. §§ 902(i), 932(c)(2), 932(j)(3); 26 U.S.C. § 9501.

On March 17, 1982, a deputy commissioner again reviewed Sisk's claim, this time in light of the transfer of liability amendments, and informally determined that it did not meet the transfer criteria; Peabody Coal remained liable. The next day the case was referred to an ALJ for formal hearing. Neither the deputy commissioner's determination that this was not a Trust Fund transfer case nor the information necessary to reach that conclusion independently was forwarded with the case.

On the basis of the information before him, the ALJ made the factual determination that the claim was denied before March 1, 1978. Therefore, on June 29, 1982, he held that pursuant to Section 205(a)(1) of the 1981 amendments to the Act, liability for payment of the benefits transferred from Peabody to the Trust Fund. The ALJ's finding that the claim was denied before March 1, 1978 was indisputably a mistake. Unknown to the ALJ, Sisk and his lawyer had notified a claims examiner of the Division of Coal Mine Workers' Compensation that they intended to proceed to a hearing to present further medical information opposing the May 3, 1976 denial. Sisk's claim was still pending after March 1, 1978.

The Director of the Office of Workers' Compensation Programs did not appeal this adverse decision to the Benefits Review Board of the Department of Labor. The mistake, however, did not go unnoticed. A deputy commissioner recognized it when the ALJ returned Sisk's file to him to authorize and begin payments to Sisk from the Trust Fund. Relying on his modification authority under 20 C.F.R. § 725.310(a), on February 22, 1983, the deputy commissioner issued an order to show cause why the ALJ's decision should not be modified to prevent Peabody's liability from being transferred to the Trust Fund. This resulted in a second opinion by the same ALJ who had decided in 1982 that the Trust Fund rather than Peabody was liable for payment of benefits. On June 7, 1984, he held that pursuant to principles of *res judicata* his earlier opinion in favor of Peabody was controlling and therefore summary judgment was granted to the company.

The Director of the Office of Workers' Compensation Programs appealed the decision to the Benefits Review Board of the Department of Labor which affirmed. The Director thereupon petitioned this Court to review the decision of the Benefits Review Board. We also affirm.

I

The crux of this case is whether a deputy commissioner is authorized by Section 22 of the Longshore Act, 33 U.S.C. § 922, to issue a compensation order modifying an ALJ's decision on the ground that the ALJ made a mistake of fact. An understanding of the processing and review procedures for black lung claims is necessary to appreciate the nature of the authority the Department of Labor asserts that a deputy commissioner possesses. These procedures are compactly stated in *Director, Office of Workers' Compensation Programs v. Drummond Coal Co.*, 831 F.2d 240, 241 (11th Cir.1987):

> The Black Lung Benefits Act provides that black lung claims are to be processed by the Secretary of Labor in accordance with the procedural provisions of the Longshore and Harbor Workers' Compensation Act ("Longshore Act"). 30 U.S.C. § 932(a). Section 19 of the Longshore Act, 33 U.S.C. § 919, prescribes the basic claims procedure: claims are filed with a deputy commissioner who notifies all interested parties, investigates the claim, and orders a hearing at the request of any interested party. 33 U.S.C. §§ 919(a)–919(c). Hearings are then held before an administrative law judge ("ALJ"), pursuant to the procedural requirements of the Administrative Procedures Act. 33 U.S.C. § 919(d). Section 21 of the Longshore Act establishes the procedure for review and enforcement of compensation orders outlining the jurisdiction and role of the Benefits Review Board, which hears appeals from determinations made by administrative law judges, and of the courts of appeal which may hear petitions for review of final decisions of the Benefits Review Board. 33 U.S.C. § 921.

The Department of Labor argues that a deputy commissioner possesses the authority to stop and reverse this process by later modifying the ALJ's decision.

The modification of awards is governed by Section 22 of the Longshore Act, 33 U.S.C. § 922, and 20 C.F.R. § 725.310.

Section 22 of the Longshore Act provides in part:

> Upon his own initiative, or upon the application of any party in interest (including an employer or carrier which has been granted relief under section 908(f) of this title), *on the ground of a change in conditions or because of a mistake in a determination of fact by the deputy commissioner*, the deputy commissioner may, at any time prior to one year after the date of the last payment of compensation, whether or not a compensation order has been issued, or at any time prior to one year after the rejection of a claim, review a compensation case ... [and] issue a new compensation order which may terminate, continue, reinstate, increase, or decrease such compensation, or award compensation (emphasis supplied).

In turn, 20 C.F.R. § 725.310 provides:

> (a) Upon his or her own initiative, or upon the request of any party *on grounds of a change in conditions or because of a mistake in a determination of fact*, the deputy commissioner may, at any time before one year from the date of the last payment of benefits, or at any time before one year after the denial of a claim, reconsider the terms of an award or denial of benefits (emphasis supplied).

■ These two sections differ regarding the critical language. The statute provides that a deputy commissioner may modify an ALJ's award "because of a mistake in a determination of fact *by the deputy commissioner*." 33 U.S.C. § 922 (emphasis supplied). The regulation purportedly promulgated thereunder provides that a deputy commissioner may modify an ALJ's award "because of a mistake in a determination of fact." 20 C.F.R. § 725.310. Unlike the statute, the regulation does not

limit the deputy commissioner's authority to modification of his or her own mistakes of fact. The Director argues that the lack of any language in the regulation limiting the scope of a deputy commissioner's reconsideration to his or her own mistake of fact authorizes modification of any award or denial of benefit.

■ Ordinarily "considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer." *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694; see also *Commodity Futures Trading Commission v. Schor*, 478 U.S. 833, 106 S.Ct. 3245, 3254, 92 L.Ed.2d 675; *Geldermann, Inc. v. Commodity Futures Trading Commission*, 836 F.2d 310, 315–316 (7th Cir.1987). However, this deference is inapposite when the Director's construction directly contravenes the express language of the statute. The limitations of Section 22 of the Longshore Act control the proper interpretation of the regulation. Thus a deputy commissioner may, on the basis of a mistake in fact, modify an order of an ALJ or Benefits Review Board only if the mistake in fact was the deputy commissioner's own. Accord, *Director, Office of Workers' Compensation Programs v. Drummond Coal Co.*, 831 F.2d 240 (11th Cir.1987).

The construction that we give the statute today is not inconsistent with that given the statute by our colleagues of the Sixth Circuit in *Saginaw Mining Co. v. Mazzulli*, 818 F.2d 1278 (6th Cir.1987). First, that court held that the process of modifying a compensation award must, under the statutory scheme, begin with the deputy commissioner because "the initial stages of a modification proceeding, like the initial stages of a new claim proceeding, do not involve hearings." *Id.* at 1282. As Judge Cornelia Kennedy noted, the deputy commissioner may determine that there is no dispute on the modification, thereby eliminating any need for a hearing before the administrative law judge. Secondly, in similar fashion, if the deputy commissioner

corrects his or her own error, it makes a good deal of sense, in this statutory scheme, to permit the deputy commissioner to make the initial correction, subject to later review.

These two situations are quite different from the one before us where the deputy commissioner attempts to correct the error of another step in the administrative process. Here it seems quite logical for Congress to assume that the error would be corrected by the official who made it or by higher authority—not by the deputy commissioner. Therefore, like the Eleventh Circuit in *Drummond Coal*, 831 F.2d 246 n. 12, we see no conflict between our holding today and the position of the Sixth Circuit.

 In Sisk's case the only mistake in a determination of fact was by the ALJ in his first opinion, not by a deputy commissioner. A deputy commissioner, on March 17, 1982, made the correct factual determination that Sisk's claim was still pending on March 1, 1978, and thus reached the legal conclusion that Peabody's liability should not transfer to the Trust Fund. The ALJ, because of a procedural mistake by someone in the Department of Labor, made a factual mistake and determined that the denial of Sisk's claim was final on March 1, 1978, so that the Trust Fund was liable. The ALJ's mistake of fact would have been obviated if the Director or another Labor Department employee had advised him that the May 3, 1976 denial of Sisk's claim was not final. Since there was no "mistake in a determination of fact by the deputy commissioner," he had no power under Section 22 of the Longshore Act to set aside the judgment of the ALJ and its affirmance by the Benefits Review Board.*

The result achieved in this case should prevent a further dispute as to the liability of the Trust Fund or Peabody or neither, thus assuring Sisk a more certain remedy than if the Director should prevail in his

request for a remand in a controversy unfortunately dating from 1974.

The decision and order of the Benefits Review Board are affirmed with costs to respondents.

---

* We need not determine here whether a deputy commissioner could overturn a decision of an ALJ or of the Benefits Review Board, as opposed to a decision of his or her own, if there were "a mistake in a determination of fact by the deputy commissioner" within the meaning of Section 22 of the Longshore Act.