**DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR, Petitioner,**

v.

**Ben E. JOURDAN, Respondent.**

No. 91–3021.

United States Court of Appeals, Seventh Circuit.

Argued April 28, 1992.

Decided Sept. 21, 1992.

Donald S. Shire, Sol. Gen., Michael J. Denney, Edward Waldman (argued), David S. Fortney, Dept. of Labor, Office of the Sol., Washington, D.C., for petitioner.

Howard B. Eisenberg (argued), Little Rock, Ark., for respondent.

Linda M. Meekins, Ann McLaughlin, Benefits Review Bd., Dept. of Labor, Lisa L. Lahrman, Benefits Review Bd., Executive Counsel, Clerk of the Bd., Washington, D.C., for party-in-interest.

Before MANION, Circuit Judge, FAIRCHILD, and WOOD, Jr., Senior Circuit Judges.

HARLINGTON WOOD, Jr., Senior Circuit Judge.

Respondent Ben E. Jourdan was born on September 13, 1913 and worked in coal mines for thirty-two years until his retirement in 1976. He now suffers from senile dementia and resides in a nursing home. This case involves his attempts spanning a twenty year period to obtain disability benefits pursuant to the Black Lung Benefits Act, 30 U.S.C. § 901 *et seq.* ("BLBA").

## BACKGROUND

Jourdan initially filed a claim for black lung benefits with the Social Security Administration ("SSA") in 1971 which was denied in 1972. In 1976, he filed a claim for black lung benefits with the Department of Labor. Pursuant to the 1977 Amendments to the BLBA which mandated that all claims denied prior to March 1, 1978 be reevaluated under less restrictive criteria, Jourdan elected to have his claim reviewed by the SSA. His claim was denied by the SSA in 1979, but was referred to the Secretary of Labor for review pursuant to 30 U.S.C. § 945(a)(2)(B)(i).

In April 1981, a claims examiner at the Department of Labor issued a notice of initial finding that Jourdan was eligible for benefits and had become totally disabled on August 1, 1976. This notice was sent to Freeman United Coal Mining Co. ("Freeman"), the responsible operator. Freeman contested the finding and in August 1981, the deputy commissioner determined that Jourdan was in fact eligible and ordered Freeman to pay benefits beginning at the time of Jourdan's retirement in 1976. Freeman contested the entitlement and the claim was referred to the Office of Administrative Law Judges for a hearing.

The BLBA was again amended in 1981. The amendments provided that in cases where liability was denied prior to March 1, 1978 and were then approved under the 1977 Amendments, liability transferred from the responsible operator to the Black Lung Disability Trust Fund ("Trust Fund"). In March 1982, Administrative Law Judge ("ALJ") Johnson dismissed Freeman pursuant to the 1981 amendments, found the Trust Fund liable for benefits and ordered that the case be returned to the deputy commissioner for payment. The Director did not appeal this order.

In October 1982, the deputy commissioner reviewed Jourdan's claim and deter-

mined that his finding of pneumoconiosis was based on an X-ray which had been interpreted by a radiologist erroneously identified as a "B" reader. The commissioner stated further that "this single positive interpretation was insufficient to support entitlement in the face of numerous negative X-ray interpretations by more qualified readers," and issued an order to show cause why the order should not be modified to a denial of compensation.

Jourdan requested a hearing and in November 1982, his claim was transferred to the Office of Administrative Law Judges for a formal hearing which was held in September 1986. In February 1987, ALJ Osborn affirmed the initial award of benefits, finding the action of the deputy commissioner was beyond his jurisdiction. In July 1991, the Benefits Review Board ("BRB") affirmed the decision of the ALJ and the Director appealed.

## ANALYSIS

The narrow issue presented on appeal is whether the deputy commissioner was acting within his jurisdiction when he modified ALJ Johnson's initial award of benefits. We find that he was not and affirm the decision of the BRB.

Black lung claims are processed by the Secretary of Labor in accordance with the procedures set forth in the Longshore and Harbor Workers' Compensation Act ("Longshore Act"). Prior to 1972, the deputy commissioners were the sole arbiters of eligibility under the Longshore Act. In 1972 Congress amended the Longshore Act to conform to the Administrative Procedures Act. Under the amended Longshore Act, the deputy commissioner was stripped of his hearing power which was transferred to the ALJ. The purpose of these amendments was to separate the administrative and adjudicative functions. H.R.Rep. No. 1441, 92nd Cong.2d Sess. 3

(1972), *reprinted in* 1972 U.S.C.C.A. 4698, 4709.

Accordingly, although an application for benefits must be made to the deputy commissioner, the deputy commissioner has primarily administrative responsibilities. He is empowered to make an initial finding of eligibility but the parties may then request a hearing before an ALJ. The ALJ is the ultimate adjudicator of eligibility.

■ Section 22 of the Longshore Act governs the modification of awards and provides that,

Upon his own initiative, or upon the application of any party in interest ... on the ground of a change in conditions or because of a mistake in a determination of fact by the deputy commissioner, the deputy commissioner may, at any time prior to one year after the date of the last payment of compensation, whether or not a compensation order has been issued, or at any time prior to one year after the rejection of a claim, review a compensation case ... and in accordance with [section 919 of the Act] issue a new compensation order which may terminate, continue, reinstate, increase, or decrease such compensation, or award compensation.

33 U.S.C. § 922. Although section 22 does not refer to ALJs, we have determined that an ALJ may correct his own factual errors. *Eifler v. Peabody Coal Co.*, 926 F.2d 663 (7th Cir.1991). Section 22 does not, however, permit a deputy commissioner to modify an order of an ALJ based on a mistake of fact committed by the ALJ. *Director v. Peabody Coal Co.*, 837 F.2d 295 (7th Cir. 1988); *Accord Director v. Palmer Coking Coal Co.*, 867 F.2d 552, 555 (9th Cir.1989); *Director v. Kaiser Steel Corp.*, 860 F.2d 377, 379 (10th Cir.1988); *Director v. Drummond Coal Co.*, 831 F.2d 240, 245 (11th Cir.1987).[1] Against this backdrop we must determine whether the deputy com-

1. The Director concedes that a deputy commissioner may not modify factual errors of an ALJ, but nonetheless contends that the deputy commissioner was "merely" initiating a modification proceeding which he had jurisdiction over

under § 22. It is not sensible to read § 22 as authorizing a deputy commissioner to initiate modification procedures of factual errors not his own.

missioner was correcting his own mistake or the ALJ's.

■ Jourdan's case is particularly problematic because neither the deputy commissioner nor the ALJ set forth fact findings to support their initial award of benefits. The only finding made by the deputy commissioner or the ALJ was the legal conclusion that Jourdan was eligible for benefits. Consequently, there is no evidence in the record that the ALJ relied on or even considered the allegedly erroneously admitted X-ray.

Further, a decision finding eligibility entails a fact finding that a claimant suffered from pneumoconiosis. Because the ALJ found Jourdan eligible for benefits, we conclude that he independently reviewed the record and determined that Jourdan suffered from pneumoconiosis. In attempting to modify the award of benefits, the deputy commissioner stated that the erroneously admitted 1980 X-ray was the only evidence supporting a finding of pneumoconiosis. This is not an accurate characterization of the record. An X-ray taken in 1971 reported findings consistent with pneumoconiosis, as did a 1974 X-ray. A medical report by Dr. J.K. Frost dated November 19, 1971 made a diagnosis of pneumoconiosis.

Even if the ALJ's decision was based in part or in whole on Dr. Posgay's X-ray—which we do not know—this would not change the result. The critical point is that the ALJ made a determination, right or wrong, and the deputy commissioner may not disregard this determination.

This result is consistent with our precedent. In *Eiffler v. Peabody Coal Co.*, 926 F.2d 663 (7th Cir.1991), we held that under the 1972 amendments to the Longshore Act, factual mistakes warranting modification will generally be committed by an ALJ. *Id.* at 666 (holding that ALJs may correct their own errors under section 22). We further held that in any case which has gone to a hearing before an ALJ, the mistake of fact, if any, will have been made by the ALJ. *Id.*

It is immaterial that in Jourdan's case, the ALJ never held a hearing. Once the deputy commissioner had performed his administrative tasks, the ALJ assumed full adjudicatory responsibility. Any action by the deputy commissioner to modify that result constitutes direct interference with the adjudicatory process. *See Director v. Palmer Coking Coal Co.*, 867 F.2d 552, 556 (9th Cir.1989) (by "transferring adjudicatory responsibility to the ALJs, Congress may have wanted in some measure to insulate the adjudicatory process from outside interference."). Such a result would violate the fundamental integrity of the administrative process. *Director v. Drummond Coal Co.*, 831 F.2d 240, 245 (11th Cir.1987).[2]

Since the 1972 amendments to the Longshore Act, every court which has addressed the deputy commissioner's power to modify under section 22 has determined that the deputy commissioner was, in fact, modifying an award of the ALJ and therefore exceeding his jurisdiction. *Director v. Palmer Coking Coal Co.*, 867 F.2d 552, 555 (9th Cir.1989); *Director v. Peabody Coal Co.*, 837 F.2d 295 (7th Cir.1988); *Director v. Kaiser Steel Corp.*, 860 F.2d 377, 379 (10th Cir.1988); *Director v. Drummond Coal Co.*, 831 F.2d 240, 245 (11th Cir.1987). In reaching our result today, we are not delineating when a mistake can be

---

**2.** We note that after the initial award of benefits by the ALJ, the Director did not pursue any of the remedies available to challenge the award. After the deputy commissioner modified the award to a denial, the Director proceeded to zealously argue that Jourdan was not entitled to benefits after all. Although we find nothing in the statute which prevents him from doing so, this course of events is nonetheless regrettable. As we noted in *Amax Coal Co. v. Franklin,* 957 F.2d 355, 356 (7th Cir.1992), adjudication of black lung benefits is in too many cases "protracted scandalously."

Because the Director failed to pursue available remedies when the ALJ awarded benefits in March 1982 and then challenged the ALJ's subsequent reversal of the deputy commissioner's modification award all the way to this court, the case has been spun out for ten more years. In the ensuing ten years, not only has Jourdan's mental condition deteriorated dramatically, but his family has had to live with the possibility that his award of benefits could be reversed and that he would have to repay the benefits received.

**1290**

characterized that of the deputy commissioner. We simply hold that where, as here, the record is devoid of any evidence indicating that the ALJ failed to make an independent determination of eligibility any mistake in fact must be attributed to the ALJ.

CONCLUSION

For the foregoing reasons, the decision of the ALJ is

AFFIRMED.