Glen L. RUTHERFORD, Individually and on Behalf of A Class Composed of Terminally Ill Cancer Patients, Plaintiffs-Appellees,

v.

UNITED STATES of America, et al., Defendants-Appellants,

"Save the United States Movement, Improving Public Health and Physical Fitness of the United States Citizens," Amicus Curiae.

Nos. 85–1053, 85–1735.

United States Court of Appeals, Tenth Circuit.

Dec. 9, 1986.

Al J. Daniel, Jr., Atty., Appellate Staff, Civil Div., Dept. of Justice, Washington, D.C. (Richard K. Willard, Acting Asst. Atty. Gen., William S. Price, U.S. Atty. for the W.D. of Okl. and Robert S. Greenspan, Atty., Civil Div., Dept. of Justice, Washington, D.C., and Thomas Scarlett, Chief Counsel; Michael M. Landa, Associate Chief Counsel, Food and Drug Admin., Rockville, Md., of counsel, with him on the briefs), for defendants-appellants.

Kirkpatrick W. Dilling of Dilling, Gronek and Armstrong, Chicago, Ill. (Robert E. Armstrong of Dilling, Gronek and Armstrong, Chicago, Ill., and Page Dobson and Rodney L. Cook of Holloway, Dobson, Hudson and Bachman, Oklahoma City, Okl., of counsel, with him on the briefs), for plaintiffs-appellees.

David S. King of Williams & King, Washington, D.C., filed a brief for amicus curiae.

Before McKAY, MOORE and TACHA, Circuit Judges.

## McKAY, Circuit Judge.

This appeal is the culmination of nearly twelve years of litigation between terminally ill cancer patients seeking to obtain and use the substance commonly known as Laetrile and the Federal Food & Drug Administration (FDA). In 1975, the FDA issued a declaratory order that classified Laetrile as a "new drug" for purposes of the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 301–392 (1982 & Supp. III 1985) (the Act). Absent exemption by either the grandfather clause of 1938, 21 U.S.C. § 321(p)(1) (1982), or the grandfather clause of 1962, Act of Oct. 10, 1962, Pub.L. No. 87–781, § 107, 76 Stat. 780, 788–89,[1] such classification requires the filing of a new drug application and subsequent FDA approval before the drug may be administered. This initial declaratory order was challenged in the Western District of Oklahoma in a class action by terminally ill cancer patients. The convoluted procedural development of the case thereafter includes four dispositions by this court as well as a decision by the United States Supreme Court.[2] It also entails FDA hearings conducted pursuant to 21 U.S.C. § 371(c) (1982) which resulted in an administrative record supporting the conclusion that Laetrile falls within the statutory definition of a "new drug." We affirmed the FDA's conclusion and, in our most recent action, ordered the district court to dismiss the complaint and dissolve all injunctions. The district court complied on March 2, 1984.

On May 21, 1984, plaintiffs filed a petition and motion in the district court to reopen the case and amend the complaint. The court granted the motion, conducted hearings, and concluded that Laetrile is not a "new drug" under the statutory definition and therefore does not require new drug approval. The court also reinstated the injunction prohibiting the FDA from interfering with plaintiffs prescribed use of Laetrile. The Government appeals, challenging the jurisdictional authority of the district court to reopen an administrative appeals case to consider either "newly discovered" or "newly developed" evidence pertaining to the FDA's "new drug" determination that was once affirmed by this court. We conclude that the district court had no such authority and reverse.

## I.

The FDA prohibits introduction or delivery of a "new drug" into interstate commerce unless the agency has approved a new drug application for the drug. 21 U.S.C. § 355(a) (Supp. III 1985). The filing of a new drug application is only required for a "new drug," statutorily defined as:

(1) Any drug (except a new animal drug or an animal feed bearing or containing a new animal drug) the composition of which is such that such drug is not generally recognized, among experts qualified by scientific training and experience to evaluate the safety and effectiveness of drugs, as safe and effective for use under conditions prescribed, recommended, or suggested in the labeling thereof, except that such a drug not so recognized shall not be deemed a "new drug" if at any time prior to the enactment of this chapter it was subject to the Food and Drugs Act of June 30, 1906, as amended and if at such time its labeling

---

1. In an earlier appeal, this court specifically held that Laetrile fails to qualify under either grandfather clause exemption. *Rutherford v. United States,* 616 F.2d 455, 457 (10th Cir.), *cert. denied,* 499 U.S. 937, 101 S.Ct. 336, 66 L.Ed.2d 160 (1980). This determination is not at issue here.

2. A detailed discussion of this case's history is unnecessary to the disposition of this appeal. We will discuss the prior decisions in this case only as they are relevant to this appeal's determination. For the interested reader, the report-

ed opinions in order of decision are: *Rutherford v. United States,* 399 F.Supp. 1208 (W.D.Okla. 1975); *Rutherford v. United States,* 542 F.2d 1137 (10th Cir.1976); *Rutherford v. United States,* 424 F.Supp. 105 (W.D.Okla.1977); *Rutherford v. United States,* 429 F.Supp. 506 (W.D. Okla.1977); *Rutherford v. United States,* 438 F.Supp. 1287 (W.D.Okla.1977); *Rutherford v. United States,* 582 F.2d 1234 (10th Cir.1978); *United States v. Rutherford,* 442 U.S. 544, 99 S.Ct. 2470, 61 L.Ed.2d 68 (1979); *Rutherford v. United States,* 616 F.2d 455 (10th Cir.1980).

contained the same representations concerning the conditions of its use; or

(2) Any drug (except a new animal drug or an animal feed bearing or containing a new animal drug) the composition of which is such that such drug, as a result of investigations to determine its safety and effectiveness for use under such conditions, has become so recognized, but which has not, otherwise than in such investigations, been used to a material extent or for a material time under such conditions.

21 U.S.C. § 321(p) (1982). Thus, for a drug to be exempt from "new drug" status, it must be generally recognized by qualified experts as safe and effective when used as recommended for the specified conditions.

This means that the proponents of a drug determine what constitutes effectiveness by articulating what the drug is supposed to do. In this case, and particularly on this appeal, plaintiffs claim that Laetrile alleviates pain and that pain reduction should be a criterion for effectiveness.[3] The earlier decisions in this case indicate, however, that plaintiffs have already raised this question, that pain reduction was an issue in the FDA hearings, and that the FDA's determination finding no general recognition of effectiveness for pain alleviation was affirmed by both the district court and this court. Therefore, whether Laetrile is generally recognized as effective for reducing pain is not a new issue for the parties to litigate.

The FDA notice of its decision that Laetrile would be classified as a new drug explicitly discussed the possible effect Laetrile has on pain, citing studies and physicians' testimony about the drug's effectiveness in alleviating pain. For example, it cited a 1963 report from the Cancer Advisory Council concluding that "[t]he records failed to indicate that the patients treated with Laetrile secured either palliation or regression of their cancerous affliction as a result of the therapy." 42 Fed.Reg. 39779 (1977). Among the witnesses who testified at the FDA hearing, Dr. Harold James Wallace, Jr. stated: "Neither has there been any evidence that [Laetrile] decreases the symptoms of pain, weakness, or depression from cancer in any direct way." Id. at 39783. Dr. John T.P. Cudmore testified: "I have never seen any evidence of cure or palliation with Laetrile." Id. The FDA notice also stated: "Several experts qualified by scientific training and experience in the field of cancer research and cancer treatment submitted similar statements attesting that they know of no cyanogenic glycoside [of which Laetrile is one] that is generally recognized as safe and effective for the treatment, prevention, or cure of cancer, for the relief of pain associated with cancer, or for any medical purpose." Id. at 39784.

On appeal from the FDA's decision, the district court vacated the ruling that Laetrile is a new drug only because the court held it was exempt under the 1962 grandfather clause. Rutherford v. United States, 438 F.Supp. 1287, 1301 (W.D.Okla.1977). The court affirmed the FDA decision that Laetrile is not "generally recognized as

---

**3.** One claim made by plaintiffs on appeal here is that the Supreme Court decision in this case, United States v. Rutherford, 442 U.S. 544, 99 S.Ct. 2470, 61 L.Ed.2d 68 (1979), established a new perspective as to what constitutes safety and effectiveness under the initial definition of a "new drug." Plaintiffs misinterpret the Supreme Court's opinion as holding that a drug's ability to reduce pain is a *new* criterion to be considered when determining "effectiveness" under the definition of a "new drug." Rather, the Court simply explained that "effective" does not mean exclusively capacity to cure—"a drug is effective if it fulfills, by objective indices, its sponsor's claims of prolonged life, improved physical condition or reduced pain." Ruther-

ford, 442 U.S. at 555, 99 S.Ct. at 2477 (citing 42 Fed.Reg. 39776–86 (1977)). In fact, the Court cited the FDA decision in this case regarding Laetrile in asserting that the FDA already considered effects other than the ability to cure in its definition of effectiveness. The Court thereby explained that the term "effective" has meaning for terminally ill patients because they can feel pain relief. This allowed the Court to reverse the Tenth Circuit decision that "safe and effective" has no meaning for terminally ill patients. The Supreme Court did not raise a new issue as to what constitutes effectiveness, but instead explained what the FDA actually considered "effective" to mean in this case.

safe and effective" and, therefore, affirmed the FDA's conclusions that Laetrile qualified under the initial definition of a "new drug." *Id.* at 1293. Although the district court's most recent decision concludes that it never specifically addressed the issue of whether Laetrile is generally recognized as safe and effective for the alleviation of pain, record, vol. 1, at 81, the court's 1977 opinion indicates otherwise. In 1977, the court reviewed the issue of safety and effectiveness for use in the "treatment" of cancer. *Rutherford,* 438 F.Supp. at 1292. The court was aware that the FDA considered alleviation of pain to be an aspect of treatment, because the court mentioned that "[m]any doctors testify that Laetrile can confer an 'improved quality of life' even upon patients who ultimately die, by reducing their pain and discomfort." *Id.* at 1292 n. 9. Thus, the court recognized that the issue arose in the FDA hearing. When the court affirmed the FDA ruling on the initial question that Laetrile was not generally recognized as safe and effective for the treatment of cancer, it necessarily affirmed the FDA's decision that the drug is not generally recognized as effective in reducing pain.

This court implicitly affirmed the district court's decision. In our 1980 decision, we articulated two issues: first, whether Laetrile falls within the 1938 grandfather clause exemption; and second, whether Laetrile falls within the 1962 grandfather clause exemption. *Rutherford,* 616 F.2d at 456. We found neither exemption applicable. *Id.* at 457. Although we did not explicitly affirm the district court's holding that Laetrile was properly classified as a new drug under the initial definition because it was not generally recognized as safe and effective for the treatment of cancer, our affirmance was implicit in the decision. We would not have reached the question of exemption under the grandfather clauses unless Laetrile was initially considered a "new drug." If Laetrile were not considered a "new drug" under the first part of section 321(p)(1), it would be exempt from filing a new drug application; there would be no need to consider its status under the grandfather clauses. Nevertheless, because we did not clearly articulate our findings earlier, we will do so now.

■ The standard of review for this type of agency action is dictated by section 706(2)(A) of the Administrative Procedure Act. *See Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 413–14, 91 S.Ct. 814, 822–23, 28 L.Ed.2d 136 (1971). To affirm, we must find "that the actual choice made was not 'arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law.'" *Id.* at 416, 91 S.Ct. at 823 (quoting 5 U.S.C. § 706(2)(A) (1982)). In affirming the FDA's conclusion that Laetrile qualified as a new drug, the district court found in 1977 that the FDA's decision was not arbitrary and capricious; we have no reason to find otherwise. As noted above, the FDA had testimony from numerous doctors and studies on Laetrile that concluded Laetrile was not generally recognized as effective for relief of pain. Although Laetrile proponents testified that Laetrile does alleviate pain, the record mandates our affirming the FDA's judgment. The record presents substantial evidence to support the FDA's decision that Laetrile is not generally recognized as effective for the reduction of pain.

As noted above, in 1980 we affirmed that Laetrile was a "new drug" under the statutory definition, reversed the district court's conclusion that Laetrile was exempt from new drug requirements under the 1962 grandfather clause, and remanded the case. On remand the district court held additional hearings and again determined that Laetrile was exempt under the 1962 grandfather clause. The Government's appeal from that decision led to our most recent order to the district court to dismiss the complaint and dissolve all injunctions. After doing so, the district court then reopened the case, allowing plaintiffs to amend their complaint.

■ If an appellate court reverses a judgment and remands with orders to dismiss, the district court has discretion to

allow plaintiffs to amend their complaint except in two instances. The lower court has no discretion if the appellate court mandate either calls for or precludes amendment or if amendment would run counter to the appellate court mandate. *R.E.B., Inc. v. Ralston Purina Co.,* 525 F.2d 749, 751 (10th Cir.1975); 1B *Moore's Federal Practice* ¶ 0.404[10], at 172 (2d ed. 1984). Moreover, the district court is not only bound by the appellate court mandate, but also by determinations made in preceeding stages of appeal. 1B *Moore's Federal Practice* ¶ 0.404[1], at 117–24 (2d ed. 1984); *see also Beltran v. Myers,* 701 F.2d 91, 93 (9th Cir.), *cert. denied,* 462 U.S. 1134, 103 S.Ct. 3115, 77 L.Ed.2d 1369 (1983) (lower courts may decide an issue on remand so long as the issue was not expressly or impliedly disposed of on appeal). Because this court previously affirmed the district court's affirmance of the FDA's finding with respect to Laetrile's lack of effectiveness for the alleviation of pain, our earlier decision now binds the district court. Therefore, the district court cannot reconsider the issue and had no jurisdiction to reopen the case.

## II.

Not only does our prior holding in this case prohibit reconsideration of the issue of pain alleviation as it pertains to the "effectiveness" prong of the "new drug" definition, no allegation of new evidence can overcome our prior holding and justify reconsideration at the district court level. Plaintiffs' brief states that the new issue in this case is whether *"as of 1984,* Laetrile was an ordinary drug not requiring any 'new drug' approval because 'generally recognized as safe and effective to alleviate or reduce pain, by experts qualified by scientific training and experience to evaluate the safety and effectiveness of drugs as safe and effective for such use.'" Appellee's brief at 11 (emphasis in original). Plaintiffs apparently emphasize 1984 because it is the year that they filed their petition to reopen. As we have discussed above, the issue of Laetrile's effectiveness in reducing pain has already been decided. Changing

the question to whether Laetrile is generally recognized as effectively alleviating pain as of 1984 does not create a new issue before this court. At best, it suggests plaintiffs have new evidence of general recognition. Plaintiffs may indeed be able to prove that, as of 1984, the drug is generally recognized as safe and effective when in 1977 they could not. Plaintiffs' motion to reopen is consistent with this analysis because it prays for leave to file an amended complaint "which would supersede and take the place of the original complaint filed some nine years last past, and reflecting scientific, clinical, and other developments as to so-called 'Laetrile,' particularly as to the general recognition of safety and efficacy (by those having expert knowledge thereof) as to its effectiveness and safety when employed for pain." Record, vol. 1, at 17. Nevertheless, if plaintiffs do, in fact, have new evidence, whether newly discovered evidence or newly developed evidence, the district court does not have the jurisdiction to initially consider the new evidence.

■ If the evidence is newly discovered—evidence that existed at the time of trial but was not discovered then—the proper forum for reconsideration is with the body that initially decided the issue. That body is the FDA, *not* the district court which merely reviewed the FDA's initial decision. "Administrative agencies have an inherent authority to reconsider their own decisions, since the power to decide in the first instance carries with it the power to reconsider." *Trujillo v. General Electric Co.,* 621 F.2d 1084, 1086 (10th Cir.1980) (citation omitted). The Act supports this analysis. In the administrative provision addressing the review of an order, the Act allows the petitioner to apply to the reviewing court for leave to present additional evidence. If satisfied with the merits of petitioner's application, the reviewing court may order the additional evidence to be presented *to the Secretary* (or his designee) and allow *the Secretary* to modify his findings of fact. 21 U.S.C. § 371(f)(2) (1982). Although section 371(f)

does not apply to this particular review, it does indicate Congress' intent to have evidence considered first by the FDA. The district court's function is to review the capriciousness of the FDA's determinations based upon the evidence before the FDA, not to supplant the FDA by making a de novo determination of "new drug" status after reviewing evidence never considered by the FDA.

This conception of the proper spheres of the FDA and the courts, respectively, is confirmed in section 355(h) of the Act which deals with appeals from an order of the Secretary refusing or withdrawing approval of a new drug application. Until the record is filed for appeal, the Secretary may modify his order concerning a new drug application. After the record is filed, the petitioner may apply to the court to present additional evidence. If appropriate, the court of appeals may grant the application and order *the Secretary* to reconsider the order. These two provisions demonstrate that the intent behind the Act was to give the agency the primary jurisdiction to determine evidentiary matters concerning drugs about which it has a special expertise. *See also CIBA Corp. v. Weinberger*, 412 U.S. 640, 643–44, 93 S.Ct. 2495, 2497–98, 37 L.Ed.2d 230 (1973) (because of its expertise, the FDA should make the threshold determination of whether a drug is a "new drug"). Therefore, because the FDA has original jurisdiction to determine whether a drug is a "new drug," the proper forum to consider newly discovered evidence going to the heart of the FDA's decision is the FDA, and it is there that plaintiffs should have taken their petition to reopen.

■ If plaintiffs' evidence is newly developed since the FDA hearing, as opposed to newly discovered, the district court still has no jurisdiction to reopen the case. The FDA has already concluded Laetrile is a new drug, because it is not generally recognized by qualified experts as a safe and effective cancer drug. Moreover, it is not

exempt from pre-market approval requirements for new drugs by virtue of the grandfather provisions of the Act. This court affirmed the FDA's findings. Evidence of Laetrile's effectiveness developed *since* the hearing, therefore, cannot be relevant to the issue of whether Laetrile is a new drug; that issue has been finally decided. A "new drug" application must be filed. On the other hand, new evidence of Laetrile's effectiveness *is* relevant to whether the FDA should approve the use of Laetrile as a "new drug." *See* 21 U.S.C. § 355(b) (Supp. III 1985). Plaintiffs can use the new evidence, not to reopen hearings on a moot issue but to support their new drug application. Plaintiffs, however, must file the new drug application with the FDA. The district court has no jurisdiction over the application for a new drug, or the appeal from an FDA decision refusing or withdrawing approval of a new drug application. *See id.* § 355 (1982 & Supp. III 1985).

If plaintiffs have new evidence that existed but was not considered in the FDA hearing, they must first go to the FDA with the evidence. If the evidence is newly discovered, the plaintiffs may use it to support a new drug application. In either case, plaintiffs could not petition the district court to reconsider their case. The district court's holding that Laetrile is not a "new drug" is therefore reversed.

### III.

■ The Government also appeals the district court's reinstatement of an injunction prohibiting it from interfering with plaintiffs' use of Laetrile. Although this court earlier ordered all injunctions dissolved, the district court reasoned that the parties had stipulated to orders implementing the injunction, and it could not dissolve the injunction without the parties' consent. The court found that by previously consenting to the provisions of the orders, the Government had waived the right to litigate.[4] The issue underlying the injunction,

---

4. In this conclusion, the court was mistaken, for

the stipulations dissolved by their own terms on

however, has been decided in favor of the FDA, and the purpose of the injunction no longer exists. Initially, the court ordered the injunction to preserve the status quo. The injunction allowed certain patients to obtain Laetrile in a specific form until the FDA determined whether Laetrile was a new drug needing approval before it could be used. The injunction here is no longer justified because the FDA has determined, and its decision has been affirmed, that Laetrile is a new drug that must be approved before it may be administered.

## IV.

The Government also petitions this court to issue a writ of mandamus and/or prohibition to obtain compliance with this court's order of April 6, 1983, to dismiss the complaint and dissolve all injunctions. The Supreme Court has held that "if a lower court 'mistakes or misconstrues the decree of this Court, and does not give full effect to the mandate, its action may be controlled ... by a writ of mandamus to execute the mandate of this Court.'" *General Atomic Co. v. Felter*, 436 U.S. 493, 497, 98 S.Ct.

1939, 1941, 56 L.Ed.2d 480 (1978) (per curiam) (citation omitted). This court has employed the writ to achieve the same result. *See City & County of Denver v. Matsch*, 635 F.2d 804, 809 (10th Cir.1980). In this case, such action is unnecessary.

▮▮▮▮ The district court gave effect to our order of April 4, 1983, by dismissing the complaint and dissolving the injunctions. Although the district court later allowed plaintiffs to reopen the case and amend their complaint, it did not necessarily violate our mandate. A district court's duty on remand is to carry out the decree of the superior court; it cannot "give any other or further relief, or review it upon any matter decided on appeal for error apparent, or intermeddle with it, further than to settle so much as has been remanded." *Sibbald v. United States*, 37 U.S. (12 Pet.) 488, 492, 9 L.Ed. 1167 (1838). The district court settled the case as it was remanded. This court did not prohibit reopening the case. The district court may not have had jurisdiction to reopen the case under these circumstances, but that does

the disposition of the appeal. On April 8, 1977, the district court certified the plaintiff class as including cancer patients for whom a practicing physician submitted an affidavit attesting to the terminal nature of plaintiff's illness (the affidavit system). At the same time the court issued a preliminary injunction prohibiting the Government from interfering with the importation or interstate transfer of Laetrile by plaintiffs. One month later, the court issued an order clarifying the affidavit system. The Government subsequently filed a motion to show cause for contempt of the preliminary injunction. On August 2, 1977, the parties joined in the first of five stipulated orders which established a procedure for importing Laetrile consistent with the preliminary injunction.

The district court concluded that, because the stipulated orders were entered into by the parties' consent, the Government forever waived its right to challenge plaintiff's ability to import Laetrile. The court stated that its decision relied on the language in the orders. Findings of Fact and Conclusions of Law, record, vol. 1, at 78–79. The language shows, however, that the parties intended the orders to be effective only as long as plaintiff's appeal was before the district court.

The first two stipulated orders established the procedure for importation. *See* Stipulated Order and Supplemental Stipulated Order, record,

vol. 1, at 83–92. The third order stated that the first two orders "are hereby continued in effect until such time as the U.S. District Court for the Western District of Oklahoma rules upon the administrative record compiled by the Federal Food and Drug Administration and heretofore submitted to the court for judicial review." Order, *id.* at 93. The fourth order provided that failure to allow importation of Laetrile unaccompanied by an authorized affidavit would not violate the court's orders "pending resolution by the parties to this action of all labeling issues or until further court order." Stipulated Order, *id.* at 94. The fifth order amended sections of the first order and was, therefore, subject to the same limitation on effectiveness. *See* Amendment to Stipulated Order of August 22, 1977, *id.* at 95. Thus, the parties agreed the orders would be effective only until the court's final decision in the case.

At the end of that litigation, the district court reversed the FDA decision and issued a permanent injunction to prohibit the FDA from interfering with the importation of Laetrile. *Rutherford v. United States*, 438 F.Supp. 1287, 1301 (W.D.Okla.1977). By their terms, the stipulated orders were effective only as long as the appeal was pending. The stipulated orders were, therefore, dissolved as of the district courts' 1977 decision.

not require this court to issue a writ of mandamus. Our disposition here is adequate to achieve the desired result.

### V.

■ Finally, the Government asks for attorney's fees under the bad faith exception to the "American Rule" barring the award of attorney's fees to the prevailing party. As the Government correctly notes in its brief, the American legal system generally prohibits the award of attorney's fees to the prevailing party absent a statutory provision or a well-recognized, common-law exception. *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 415, 98 S.Ct. 694, 697, 54 L.Ed.2d 648 (1978). The Government claims that it is entitled to recover attorney's fees under the "bad faith" exception. This exception permits recovery when a successful party's "opponent has acted in bad faith, vexatiously, wantonly, or for oppressive reasons...." *F.D. Rich Co. v. United States ex rel. Industrial Lumber Co.*, 417 U.S. 116, 129, 94 S.Ct. 2157, 2165, 40 L.Ed.2d 703 (1974). We do not find that plaintiffs have acted in bad faith or have exhibited any behavior that would allow the Government to recover attorney's fees. The Government may be justifiably exasperated that this protracted litigation has lingered for almost twelve years. Nevertheless, plaintiffs were not acting in bad faith in trying to reopen a case in which they believe they have new evidence that would change the decision on the issue. The district court itself was convinced that plaintiffs had new evidence to support their claim. We decline to award attorney's fees to the Government, because we do not find that plaintiffs have behaved in a way to justify such award.

### VI.

The case is therefore reversed and remanded. The Federal District Court for the Western District of Oklahoma is ordered to dismiss the action and dissolve all injunctions against the United States Government, its Departments, Services, Agencies, Servants and Employees.