38 F.3d 1216
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 Clarence R. JACKSON, Petitioner,
v.
DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED
STATES DEPARTMENT OF LABOR, Respondent.
 No. 93-4248.
 United States Court of Appeals, Sixth Circuit.
 Oct. 17, 1994.
 
 Before: CONTIE, MILBURN, and DAUGHTREY, Circuit Judges.
 MILBURN, Circuit Judge.
 
 
 1
 Claimant Clarence R. Jackson appeals from an order of the Benefits Review Board ("BRB"), affirming the decision of an administrative law judge ("ALJ") which reopened his claim and terminated his black lung disability benefits. On appeal, the issues are (1) whether the deputy commissioner erred in forwarding this claim for modification since under 33 U.S.C. Sec. 922 and 20 C.F.R. Sec. 725.310, the deputy commissioner is only authorized to correct his own mistakes and not the mistakes of others; (2) whether the ALJ evaluated the evidence under the proper regulatory standards; (3) whether the ALJ erred in disregarding the testimony of lay witnesses concerning the length of claimant's coal mine employment; (4) whether the director's production of new medical evidence is a violation of 30 U.S.C. Sec. 923(b); and (5) whether it was patently unfair in this case to review the evidence in this record after claimant had been receiving black lung benefits for a number of years and the evidence had become stale. For the reasons that follow, we affirm.
 
 I.
 
 2
 In June 1973, claimant filed an application for black lung disability benefits with the Social Security Administration ("SSA").[1] On August 15, 1975, and ALJ with the SSA denied claimant's application for benefits. Claimant did not further pursue his claim.
 
 
 3
 However, pursuant to the 1977 Black Lung Benefits Reform Act, claimant's claim for benefits was reopened, and claimant elected to have his previously denied claim reviewed by the SSA. Subsequently on May 30, 1979, the SSA approved the claim as an initial finding of entitlement pursuant to 30 U.S.C. Sec. 945(a)(2)(A), and forwarded the approved claim to the Department of Labor ("DOL").[2] After receiving the certified award of benefits from the SSA, the DOL notified claimant on July 18, 1979, that his claim would be paid from the Black Lung Disability Trust Fund. Thereafter, claimant began receiving black lung disability benefits.
 
 
 4
 In April 1987, the Office of Worker's Compensation Programs ("OWCP") of the DOL notified claimant that his claim was being reviewed as part of a routine claims audit. The OWCP requested additional evidence from claimant, including a new medical evaluation and information about his coal mine employment. After its review, the OWCP determined that a mistake of fact had been made in the SSA's initial determination. Accordingly, the OWCP instituted modification proceedings pursuant to Sec. 22 of the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. Sec. 922, which is incorporated into the Black Lung Benefits Act by 30 U.S.C. Sec. 932(a).
 
 
 5
 On August 2, 1988, a deputy commissioner[3] issued an order to show cause why claimant's initial award of benefits should not be modified to a finding of nonentitlement. In his show cause order, the deputy commissioner alleged that claimant had engaged in less than four years of qualifying employment, but the initial finding of entitlement had been based upon an erroneous finding that claimant had more than ten years of qualifying employment. This finding resulted in the application of the wrong set of regulatory standards of entitlement to claimant's application for benefits. The deputy commissioner further alleged that application of the proper regulatory standards would result in a finding that claimant was not entitled to black lung benefits in that SSA had erred as a matter of fact in determining that claimant had more than ten years of coal mine employment. Claimant disputed the deputy commissioner's allegation of a mistake of fact and requested an administrative hearing. The deputy commissioner then referred the case to an ALJ for a hearing.
 
 
 6
 Upon first receiving the case, the ALJ remanded the claim back to the deputy commissioner for further evidentiary development. Subsequently, a hearing was held before the ALJ on October 18, 1991. On May 29, 1992, the ALJ issued a decision and order in which he found that the deputy commissioner had properly instituted modification proceedings and that claimant was not entitled to black lung benefits in that SSA had erred as a matter of fact in determining that claimant had more than ten years of coal mine employment. Claimant filed a timely appeal of the ALJ's decision and order with the BRB.
 
 
 7
 On September 28, 1993, the BRB issued a decision and order affirming the ALJ's decision and order. This timely appeal followed.
 
 II.
 A.
 
 8
 A decision by the BRB must be affirmed on appeal if the BRB has not committed any legal error or exceeded its statutory scope of review of the ALJ's factual determinations. Director, OWCP v. Quarto Mining Co., 901 F.2d 532, 536 (6th Cir.1990). We review the decisions below only to decide whether they are supported by substantial evidence and in accordance with the applicable law. Kolesar v. Youghiogheny & Ohio Coal Co., 760 F.2d 728, 729 (6th Cir.1985) (per curiam). Substantial evidence is such relevant evidence which a reasonable mind would accept as adequate to support a conclusion. Ramey v. Kentland Elkhorn Coal Corp., 755 F.2d 485, 488 (6th Cir.1985). We cannot substitute our own judgment for that of the ALJ when the ALJ has carefully considered each part of the evidence. Knuckles v. Director, OWCP, 869 F.2d 996, 998 (6th Cir.1989).
 
 
 9
 Moreover, the standards of review for the BRB and this court are the same. Welch v. Benefits Review Bd., 808 F.2d 443, 445 (6th Cir.1986) (per curiam). Consequently, on appeal, review is focused on whether the ALJ, rather than the Board, had substantial evidence on which to base his or her decision. Zimmerman v. Director, OWCP, 871 F.2d 564, 566 (6th Cir.1989).
 
 B.
 
 10
 Claimant argues that the reopening and modification of his claim for benefits was improper because under 33 U.S.C. Sec. 922 and 20 C.F.R. Sec. 725.310, the deputy commissioner is authorized to correct only his own mistakes of fact, but not the mistakes of others. Specifically, claimant asserts that under Sec. 435(a)(2)(A) of the Black Lung Benefits Act, 30 U.S.C. Sec. 945(a)(2)(A), the DOL, i.e., the deputy commissioner, lacked authority to initiate modification proceedings to correct a mistake of fact made in the course of an award of benefits by the SSA.
 
 
 11
 Title 33 U.S.C. Sec. 922 provides in relevant part:
 
 
 12
 Upon his own initiative, or upon the application of any party in interest ..., on the ground of a change in conditions or because of a mistake in a determination of fact by the deputy commissioner, the deputy commissioner may, at any time prior to one year after the date of the last payment of compensation ................................. issue a new compensation order which may terminate, continue, reinstate, increase, or decrease such compensation, or award compensation.
 
 
 13
 It is well settled that under 33 U.S.C. Sec. 922 the deputy commissioner may only modify an award of benefits based upon his own mistaken factual determinations. Director, OWCP v. Palmer Coking Coal Co., 867 F.2d 552, 555-56 (9th Cir.1989); Director, OWCP v. Kaiser Steel Corp., 860 F.2d 377, 378-79 (10th Cir.1988); Director, OWCP v. Peabody Coal Co., 837 F.2d 295, 298 (7th Cir.1988); Director, OWCP v. Drummond Coal Co., 831 F.2d 240, 245 (11th Cir.1987). Further, the deputy commissioner lacks the authority to modify an award of benefits based upon a mistake of fact by the ALJ or its affirmance by the BRB. Id.
 
 
 14
 Further, although Sec. 922 does not refer to ALJs, an ALJ has authority to correct his own factual errors. Director, OWCP v. Jourdan, 975 F.2d 1286, 1288 (7th Cir.1992). This power stems from the inherent power of an agency to reconsider its decisions for the purpose of correcting its mistakes. Eifler v. Office of Workers' Compensation Programs, 926 F.2d 663, 666 (7th Cir.1991) (citing Rutherford v. United States, 806 F.2d 1455, 1460 (10th Cir.1986)).
 
 
 15
 Nevertheless, requests for modification, including modification of an ALJ decision must be initiated with the deputy commissioner. Saginaw Mining Co. v. Mazzulli, 818 F.2d 1278, 1283 (6th Cir.1987). This is because "the initial stages of a modification proceeding, like the initial stages of a new claim proceeding, do not involve hearings." Id. at 1282. In a modification proceeding, a deputy commissioner has three choices: "he or she may issue a proposed decision or order, forward the claim to an ALJ for hearing, or deny the claim [for modification] by reason of abandonment." Id. Deputy commissioners play an important role in modification proceedings which is unrelated to hearing functions, namely, by gathering evidence as required by the regulations, it is possible that the deputy commissioner will determine that no mistake had been made, thereby obviating the need for a hearing before an ALJ. Id.
 
 
 16
 Thus, modification proceedings were properly instituted by the deputy commissioner in this case, especially since there had been no prior hearing by an ALJ. Furthermore, the deputy commissioner had the authority to institute modification proceedings concerning the SSA's initial award of benefits.
 
 
 17
 30 U.S.C. Sec. 945(a)(2)(A) provides in relevant part:
 
 
 18
 The Secretary of Health, Education and Welfare shall approve forthwith each claim for which review is requested ... if, ... the evidence on file ... require[s] such approval. The Secretary of Health, Education and Welfare shall certify such approval to the Secretary of Labor and such approval shall be binding upon the Secretary of Labor as an initial determination of eligibility.
 
 
 19
 In Director, OWCP v. Goudy, 777 F.2d 1122 (6th Cir.1985), this court stated that "HEW's 'initial determinations of eligibility' under Part B are not binding upon the Department of Labor as final adjudications of eligibility." Id. at 1126. Further, we stated that to conclude that an "initial determination of eligibility" by HEW was a binding final adjudication of eligibility would render the word "initial" in the statute superfluous. Id. at 1127. Thus, we concluded "that Part C, which provides for a separate array of procedures to determine the eligibility and fiscal responsibility of black lung claims, governs Part B claims referred to DOL under Sec. 435(a)(2)(A)." Id. (citing Director, OWCP v. Forsyth Energy, Inc., 666 F.2d 1104, 1108 (7th Cir.1981)).
 
 
 20
 Further, we also concluded that the DOL was not prevented by Sec. 945(a)(2)(A) from proceeding with further Part C evaluation of a claim referred by HEW. Goudy, 777 F.2d at 1128. Indeed, we noted that since the Director is required by the 1981 Amendments to the Black Lung Benefits Act to protect the Black Lung Benefits Trust Fund from meritless claims, Shortt v. Director, OWCP, 766 F.2d 172, 174 (4th Cir.1985), treating the HEW's initial finding of eligibility as a final binding adjudication would negate the Director's mandate to protect the Fund. Goudy, 777 F.2d at 1129.
 
 
 21
 Accordingly, contrary to claimant's assertions in this case, the SSA's award of benefits was not binding upon the DOL. Furthermore, once the deputy commissioner determined that the SSA's initial determination of eligibility may have been based on a mistake of fact, the deputy commissioner properly instituted modification proceedings.
 
 C.
 
 22
 Claimant argues that "[t]he Administrative law judge in this case did not review [the] claim pursuant to the lesser standards of 20 C.F.R. [Sec.] 410.490 and therefore the case must be remanded with instructions for the Administrative Law Judge...." Petitioner's Brief at 6. This contention is utterly meritless. On page 18 of his decision and order, the ALJ stated:
 
 
 23
 This case must now be analyzed under the Part 410.490 regulations. These regulations are applicable because the Claimant filed his application for benefits prior to the effective date of the Part 718 regulations and he has established fewer than ten years of qualifying coal mine employment. See Bean v. Director, OWCP, 14 BLR 1-7 (1989).
 
 
 24
 J.A. 18. The ALJ then spent the next two pages of his decision and order considering claimant's application for benefits under the Part 410.490 regulations. Finally, the ALJ concluded:
 
 
 25
 The Claimant has failed to establish the necessary requisites for entitlement under either the Part 718 or the Part 410.490 regulations. Accordingly, the Claimant is ineligible for benefits. J.A. 20.[4] Therefore, a remand to the
 
 
 26
 ALJ for findings pursuant to Part 410.490 is unnecessary, since such findings were made by the ALJ and were unchallenged by claimant before the BRB.
 
 D.
 
 27
 Claimant argues that the new medical evidence, which was submitted by the Director after the reopening of his case, should be stricken from the record as a violation of 30 U.S.C. Sec. 923(b). Claimant asserts that since the Director is not permitted to have x-rays re-read, the acquisition of new medical evidence, rather than reliance on the medical evidence already in the record, is a violation of 30 U.S.C. Sec. 923(b).
 
 Section 923(b) provides in relevant part:
 
 28
 In any case, other than that involving a claim filed on or after the effective date of the Black Lung Benefits Amendments of 1981, in which there is other evidence that a miner has a pulmonary or respiratory impairment, the Secretary [of Labor] shall accept a board certified or board eligible radiologist's interpretation of a chest roentgenogram which is of a quality sufficient to demonstrate the presence of pneumoconiosis submitted in support of a claim for benefits....
 
 
 29
 Section 923(b) "prohibits the Secretary from relying on negative re-readings of certain positive X-rays." Back v. Director, OWCP, 796 F.2d 169, 173 (6th Cir.1986). However, where "the first reader [of an X-ray] did not meet the standard of the statute"; namely, where the first reader is neither a board-certified nor a board-eligible radiologist who has interpreted the X-ray as being positive for the presence of pneumoconiosis, "the Secretary was free to disregard the original reading and have ... [the] X-rays re-read." Id. at 172.
 
 
 30
 In this case, the record contains several X-ray readings which are positive for the presence of pneumoconiosis. However, none of the positive X-ray readings were made by a reader who was either a board-certified or board-eligible radiologist. Consequently, the Secretary was free to have such X-rays re-read. Therefore, claimant's assertion that the Secretary's acquisition of new medical evidence violated 30 U.S.C. Sec. 923(b) is meritless.
 
 
 31
 Claimant further asserts that in interpreting the X-rays of record, the ALJ failed to note that Dr. William H. Anderson is a B-reader. Appellant's Brief at 6. In his decision and order, the ALJ found that Dr. Anderson did not "have any special qualifications as an X-ray reader." J.A. 15. However, this issue is meritless. First, claimant has submitted no evidence substantiating his conclusory allegation that Dr. Anderson is a B-reader. Second, as the BRB noted in its decision and order, Dr. Anderson is board-certified in internal medicine and pulmonary disease, but not radiology, and, on his X-ray interpretation form, Dr. Anderson did not indicate that he was a B-reader. J.A. 25, 116.
 
 E.
 
 32
 Claimant also argues that the ALJ erred in relying on his social security earnings statement instead of crediting the testimony of lay witnesses who testified concerning the length of his coal mine employment. Claimant's social security earnings statement shows a total of nineteen quarters in which claimant was employed in the mining industry. During fifteen of these quarters, claimant earned more than $50.00. J.A. 107-110. The social security earnings statement also shows employment with employers which were not involved in the coal mining industry during the relevant time period. Id. Further, the social security earnings statement shows no reported earnings prior to the fourth quarter of 1954. Id.
 
 In his decision and order, the ALJ stated:
 
 33
 Having reviewed all of this evidence, I find that the Claimant has established a coal mine employment history of 4 1/2 years based upon the social security records. The lay testimony of Donald White, William White and Pearl White was very scattered ... Consequently, this testimony is not very helpful.
 
 
 34
 * * *
 
 
 35
 Because of the confusion surrounding this issue, I find that Social Security records to be the most reliable evidence. Accordingly, I find that the claimant has established a coal mine employment history of less than 10 years.
 
 
 36
 J.A. 9-10.
 
 
 37
 It is the claimant's burden to prove the duration of his coal mine employment for purposes of entitlement to benefits. Griffith v. Director, OWCP, 868 F.2d 847, 848-49 (6th Cir.1989). An ALJ may rely on social security earnings records, affidavits of relatives, friends, and former co-workers of the claimant, and testimony of the claimant in determining the length of coal mine employment. Director, OWCP v. Congleton, 743 F.2d 428, 429 (6th Cir.1984). However, the ALJ must set forth the rationale for his or her findings and the reasons for either crediting or rejecting certain evidence of alleged periods of coal mining employment. Id.
 
 
 38
 In this case, the ALJ set forth his rationale for rejecting the lay testimony and relied on the social security earnings records to establish the length of coal mine employment. Therefore, the ALJ's decision is supported by substantial evidence.
 
 
 39
 Claimant argues that "when you bring the Mayor of the City [Donald White] before and ALJ and his testimony is discounted, it becomes hard to believe that lay testimony is even being considered at all." Appellant's brief at 6. However, Mayor White's testimony was not a sound basis for crediting claimant with coal mine employment. Not only did Mayor White testify that he could not recall the dates of claimant's employment, but Mayor White also testified that he recalled claimant working into the early 1970's, which contradicted the claimant's own testimony that he stopped working in 1968 after suffering gunshot wounds. Further, as the trier of fact, the ALJ was in the best position to assess the credibility of the witnesses. See Peabody Coal Co. v. Benefits Review Board, 560 F.2d 797, 802 (7th Cir.1977).
 
 
 40
 Moreover, the decision in Griffith v. Director, OWCP, 868 F.2d 847 (6th Cir.1989), which is relied on by claimant, is inapposite to this case. In Griffith, this court found that the ALJ's reliance on the social security earnings statement was misplaced where the claimant asserted that he had considerable periods of coal mining employment prior to 1937. Social Security earnings statements were unavailable for periods prior to 1937. Id. at 849. Further, the ALJ in Griffith did not give the claimant full credit for days of employment in which he spent part of the time performing qualifying coal mine employment and part of the time in non-qualifying coal mine employment. Id. That is not the situation in this case. Claimant has not claimed any coal mine employment prior to 1948; thus, all of his coal mine employment should be covered by his social security earnings statement.
 
 F.
 
 41
 Claimant also argues that the modification of his claim was patently unfair. He asserts that it was unfair to reopen his claim after he had been receiving benefits for more than ten years and all the evidence, which was his burden to produce, had become stale.
 
 
 42
 "In deciding whether to reopen a case under Sec. 22 [33 U.S.C. Sec. 922], a court must balance the need to render justice against the need for finality in decision making." General Dynamics Corp. v. Director, OWCP, 673 F.2d 23, 25 (1st Cir.1992) (per curiam). "The purpose of Sec. is to permit ... modif[ication of] an award where there has been 'a mistake in a determination of fact (which) makes such a modification desirable in order to render justice under the act.' " Blevins v. Director, OWCP, 683 F.2d 139, 142 (6th Cir.1982) (quoting Banks v. Chicago Grain Trimmers Ass'n, 390 U.S. 459, 464 (1968). As the First Circuit noted in General Dynamics:
 
 
 43
 [T]he basic criterion is whether reopening will 'render justice under the act.'
 
 
 44
 * * *
 
 
 45
 The congressional purpose in passing the law would be thwarted by any lightly considered reopening at the behest of an employer who, right or wrong, could have presented his side of the case at the first hearing and who, if right, could have thereby saved all parties a considerable amount of expense and protracted litigation.
 
 
 46
 General Dynamics, 673 F.2d at 25-26 (quoting McCord v. Cephas, 532 F.2d 1377, 1380-81 (D.C.Cir.1976).
 
 
 47
 The Director asserts that reopening claimant's application for benefits rendered justice under the act, because claimant has mistakenly received black lung benefits for ten years which are not subject to recovery by DOL. See 20 C.F.R. Sec. 725.310(d). The Director asserts that it is not unfair to terminate benefits which never should have been paid and that justice would by served by ensuring that benefits are not paid from the Black Lung Disability Trust Fund based upon an error. We agree.
 
 III.
 
 48
 For the reasons stated, the Benefits Review Board is AFFIRMED.
 
 
 
 [1]
 When petitioner filed his application for benefits in 1973, the Social Security Administration was part of the Department of Health, Education and Welfare and administered Part B claims for black lung benefits. Subsequently, the Department of Health, Education and Welfare became the Department of Health and Human Services
 
 
 [2]
 In his brief on appeal, petitioner states:
 The Social Security Administration granted the petitioner a favorable decision pursuant to 20 C.F.R. Sec. 727.203 on the basis of a positive x-ray finding and at least ten (10) years of coal mining employment.
 
 
 [3]
 A deputy commissioner is now known as a district director. See 20 C.F.R. Sec. 715.101(a)(1). However, because the Black Lung Benefits Act and DOL regulations continue to use the term deputy commissioner, we will use the term deputy commissioner in order to avoid confusion
 
 
 [4]
 In its decision and order the BRB stated:
 We affirm the administrative law judge's findings pursuant to Sections 718.202(a), 718.204(c) and 410.490 as unchallenged on appeal. See Coen v. Director, OWCP, 7 BLR 1-30 (1984); Skrack v. Island Creek Coal Co., 6 BLR 1-710 (1983).
 J.A. 23. Claimant also has not challenged any of the ALJ's findings pursuant to Part 718 and Part 410.490 on appeal to this court.