NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0053n.06

Case No. 21-3331

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

<table>
<tr><td>

BEECH FORK PROCESSING, INC.;
SECURITY INSURANCE COMPANY OF
HARTFORD, c/o Arrowpoint Capital Security
Company,

      Petitioners,

v.

TRACI SPENCER, Administratrix of the
Estate of RAYMOND ROWE; DIRECTOR,
OFFICE OF WORKERS' COMPENSATION
PROGRAMS, U.S. DEPARTMENT OF
LABOR; U.S. DEPARTMENT OF LABOR,

      Respondents.

</td><td>

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

</td><td>

FILED
Jan 27, 2022
DEBORAH S. HUNT, Clerk

ON PETITION FOR REVIEW OF
AN ORDER FROM THE BENEFITS
REVIEW BOARD


OPINION

</td></tr>
</table>

Before: GRIFFIN, DONALD, and BUSH, Circuit Judges.

**BERNICE BOUIE DONALD, Circuit Judge.** Raymond Rowe, a former coal miner, filed for workers' compensation benefits under the Black Lung Benefits Act, 30 U.S.C. § 901 *et seq*. The administrative law judge determined that Rowe was entitled to benefits under the Act, and the Benefits Review Board affirmed that decision. Petitioners Beech Fork Processing, Inc., and Security Insurance Company of Hartford now ask this Court to review the Board's decision.

Because the Board applied the correct standard and reached a conclusion supported by the record, we deny the petition for review and thereby affirm the award of benefits to Rowe.[1]

I.

Raymond Rowe worked in coal mines, including for Beech Fork Processing, Inc., for over twenty-two years. He worked entirely underground, and his job duties included operating the miner, cutting coal, and hanging waterlines, miner cables, and ventilation curtains. He performed heavy lifting almost every day.

By 2017, nearly two decades after leaving the mines, Rowe developed severe breathing problems. He reported a daily productive cough, wheezing, and labored breathing. Following an abnormal CT scan, Rowe's primary care physician referred him to certified pulmonologist Dr. Ayesha Sikder. Dr. Sikder physically examined Rowe, documented his social and work history, and recorded the results of a pulmonary function test and CT scan of his chest. She noted that the CT scan, dated May 2017, showed a "11mm pleural[-]based lesion" on his "RUL [right upper lung]" and a "12mm lesion [on his] right apex." Claimant's Ex. 3, p. 1. She accordingly concluded that Rowe "most likely . . . has progressive [coal workers' pneumoconiosis]," which "has developed since 2011." *Id.* at p. 2.

Over the next year and a half, Dr. Sikder ordered two follow-up CT scans, two chest x-rays, and a pulmonary function study. After the first follow-up CT scan, dated August 2017, she discovered Rowe's lung problems had significantly progressed. She noted "multiple enlarging nodules [in] all lung segments," with most showing "significant progression" and "extensive calcified nodes." *Id.* at p. 4. Dr. Sikder eventually diagnosed Rowe with progressive massive fibrosis and prescribed him inhalers.

---

[1] Rowe died during the pendency of this appeal, and upon a motion, we substituted his wife, Traci Spencer, administratrix of his estate, as a respondent in his stead.

On July 21, 2017, Rowe filed for benefits under the Black Lung Benefits Act. Between November 2017 and December 2018, Rowe underwent two additional chest x-rays and two clinical examinations to assess whether he had simple or complicated pneumoconiosis. Dr. Shah, a certified pulmonologist, performed the first examination sponsored by the U.S. Department of Labor. She documented Rowe's medical history and administered a pulmonary function test, arterial blood gas study, EKG, and chest x-ray. In a report dated November 10, 2017, she recorded the results of the x-ray read by certified radiologist and B-Reader[2] Dr. Kathleen DePonte. Dr. DePonte interpreted the x-ray and identified small opacities in all six lung fields, but no large opacities. Dr. Shah determined these findings were "consistent with advanced simple clinical pneumoconiosis." Dir.'s Ex. 10, p. 5.

On November 5, 2018, Dr. David Rosenberg conducted the second examination on behalf of Beech Fork. He reviewed Rowe's medical records, including Dr. Shah's initial report, and performed his own pulmonary function test, arterial blood gas study, and EKG. Dr. Rosenberg also ordered a chest x-ray and recorded the results read by certified radiologist and B-Reader Dr. William Kendall. Dr. Kendall interpreted the x-ray and identified small opacities throughout both lungs. Unlike Drs. Sikder and Shah, Dr. Rosenberg diagnosed simple clinical pneumoconiosis "without large opacity formation." Emp.'s Ex. 1, p. 3.

Dr. DePonte re-read the November 2018 x-ray at Rowe's request. Contrary to Dr. Kendall's reading, Dr. DePonte identified both small opacities and "[b]ilateral large opacities, Category A, indicating complicated coal workers' pneumoconiosis." Claimant's Ex. 2, p. 1. Dr. DePonte noted that "[c]oalescence is present bilaterally with 12mm large opacity right upper lung

---

[2] B Readers are certified to interpret x-rays to determine if the patient has an occupation-related disease, like complicated pneumoconiosis. *See* "Chest Radiography: B Reader Program," Ctrs. For Disease Control & Prevention, https://www.cdc.gov/niosh/topics/chestradiography/breader.html (last visited Jan. 26, 2022).

zone and 11mm large opacity left mid lung zone . . . consistent with Category A large opacities of complicated coal workers' pneumoconiosis." *Id.* Dr. DePonte further suggested that "CT may reveal other large opacities which are obscured on this study due to the high background of profusion of small opacities." *Id.*

On February 26, 2019, Rowe deposed Dr. Shah. In preparation, Dr. Shah reviewed her initial medical report, Dr. Rosenberg's medical report, Drs. Kendall and DePonte's readings of the November 2018 x-ray, and Dr. Sikder's treatment records. At the deposition, Dr. Shah testified that Dr. DePonte's November 2018 x-ray reading identified large nodular coalescence, which over time "turn[s] into progressive massive fibrosis" and appears as "large opacity categories." Claimant's Ex. 1, pp. 14–16. She believed Dr. Kendall's reading, which likewise identified areas of nodular coalescence, supported Dr. DePonte's reading. Dr. Shah further noted that the CT scans in Dr. Sikder's treatment records were "consistent with the large opacities seen in coal workers' pneumoconiosis." *Id.* at p. 14. Based on the culmination of evidence, Dr. Shah diagnosed Rowe with "progressive massive fibrosis," or "complicated coal workers' pneumoconiosis." *Id.*

After hearing this and other evidence, the administrative law judge ("ALJ") found that Rowe established the existence of complicated pneumoconiosis and awarded him benefits. Beech Fork and its insurer, Security Insurance Company of Hartford, appealed to the Benefits Review Board. The Board affirmed the ALJ's award of benefits, and Beech Fork and Security Insurance Co. petitioned for review to this Court.

II.

The Black Lungs Benefit Act provides benefits to miners who suffer from "complicated pneumoconiosis," the most severe form of a chronic dust disease of the lung. 30 U.S.C. §§ 901, 902(b). Section 921(c)(3), and its implementing regulation, 20 C.F.R. § 718.304, set forth three

methods for establishing the existence of complicated pneumoconiosis: (A) a chest x-ray yielding "one or more large opacities (greater than one centimeter in diameter)"; (B) a biopsy or autopsy yielding "massive lesions" in the lung; or (C) a medical diagnosis "made by other means" of "a condition which could reasonably be expected to yield results described in clause (A) or (B)." 30 U.S.C. § 921(c)(3). The ALJ must consider "all relevant evidence," weighing the evidence within each category and from different categories against one another. 30 U.S.C. § 923(b); *Gray v. SLC Coal Co.*, 176 F.3d 382, 389 (6th Cir. 1999).

A.

Petitioners first challenge the sufficiency of the evidence supporting the ALJ's conclusion that Rowe suffered from complicated pneumoconiosis. "When the question is whether the ALJ reached the correct result after weighing conflicting medical evidence, our scope of review is exceedingly narrow." *Peabody Coal Co. v. Odom*, 342 F.3d 486, 489 (6th Cir. 2003). We review the ALJ's credibility findings "to determine whether it is supported by substantial evidence and is consistent with applicable law." *Id.* (citing *Youghiogheny & Ohio Coal Co. v. Webb*, 49 F.3d 244, 246 (6th Cir. 1995)). Substantial evidence is that which "a reasonable mind might accept as adequate to support a conclusion." *Morrison v. Tenn. Consol. Coal Co.*, 644 F.3d 473, 478 (6th Cir. 2011) (internal quotations and citations omitted). "As long as the ALJ's conclusion is supported by the evidence, we will not reverse, 'even if the facts permit an alternative conclusion.'" *Odom*, 342 F.3d at 489 (quoting *Youghiogheny & Ohio Coal Co.*, 49 F.3d at 246).

In this case, the parties disputed the nature of Rowe's lung condition. The parties agreed that the x-rays showed opacities in his lungs which constituted clinical coal workers' pneumoconiosis. However, their agreeance ended there. The parties significantly disagreed on the nature and size of the opacities, which were the central issues before the ALJ.

Rowe presented expert testimony that his lung disease surpassed simple pneumoconiosis and had progressed into complicated pneumoconiosis. Dr. Sikder reviewed a May 2017 CT scan which revealed an eleven-millimeter lesion in the right upper lobe of his lung and a twelve-millimeter lesion in his right apex. She stated that these findings represented progressive massive fibrosis, or progressive coal workers' pneumoconiosis. Dr. DePonte corroborated these findings in her November 2018 x-ray reading. Dr. DePonte likewise observed "[b]ilateral large opacities." She specifically noted a "12mm large opacity right upper lung zone and 11mm large opacity left mid lung zone." According to Dr. DePonte, these findings were "consistent with Category A large opacities of complicated coal workers' pneumoconiosis." Conversely, petitioners presented competing expert testimony, like that of Dr. Rosenberg, that the x-ray showed only small opacities indicative of simple pneumoconiosis.

"[D]eterminations to credit or discredit these medical opinions based on whether they are sufficiently documented and reasoned is a credibility matter that we must leave to the ALJ." *Big Branch Res., Inc. v. Ogle*, 737 F.3d 1063, 1073 (6th Cir. 2013) (citations omitted). "[A]s the trier of fact, the ALJ was in the best position to assess the credibility of the witnesses." *Jackson v. Dir., Off. of Workers' Comp. Programs, U.S. Dep't of Lab.*, 38 F.3d 1216, 1994 WL 573915, *6 (6th Cir. 1994) (table opinion) (citation omitted). Thus, we will not reweigh the evidence or substitute our judgment for that of the ALJ. *Peabody Coal Co. v. Groves*, 277 F.3d 829, 833 (6th Cir. 2002).

After hearing all of the competing evidence, the ALJ found that the chest x-rays failed to establish the existence of complicated pneumoconiosis. The ALJ noted that no radiologists identified large opacities on the November 2017 x-ray and accordingly found that x-ray negative for complicated pneumoconiosis. He then noted the conflicting interpretations of the November 2018 x-ray and accordingly found that x-ray inconclusive. However, the ALJ concluded that the

medical opinions sufficiently established that Rowe suffered from complicated pneumoconiosis. The ALJ gave great deference to Rowe's treating physician, Dr. Sikder. He found that Dr. Sikder obtained superior and relevant information concerning Rowe's condition due to their extended relationship. The ALJ further credited Dr. Shah's conclusions over Dr. Rosenberg's because she had a more complete picture of Rowe's condition. Overall, the ALJ found Dr. Sikder and Dr. Shah's opinions better supported by the record.

We reject Petitioners' assertion that Dr. Sikder and Dr. Shah's opinions were insufficient as a matter of law. Petitioners contend that Dr. Sikder failed to report key information regarding the CT scans, including the original interpretations and the identity of the interpreting radiologist, and that such deficiencies rendered her opinion "necessarily speculative." Petitioners further contend that Dr. Shah relied on Dr. Sikder's treatment records, and thus, her opinion suffered the same fate. However, their argument is factually inaccurate. A review of the record shows that Dr. Sikder directly reviewed and interpreted the CT scans before diagnosing Rowe with complicated pneumoconiosis. In her treatment record from June 2, 2017, Dr. Sikder noted:

> Pulmonary Medical Decision Making:
>
> CXR: direct visualization and individual interpretation performed. Chest CT: direct visualization and individual interpretation performed. PFTs: direct visualization and individual interpretation performed.

Claimant's Ex. 3, p. 2. Her other treatment records contained identical notations. Therefore, the ALJ did not err in relying on the opinions of Drs. Sikder and Shah to find that Rowe suffered from debilitating complicated pneumoconiosis.

## B.

Petitioners next contend that the Board applied the wrong evidentiary standard and failed to make the requisite equivalency determination under 30 U.S.C. § 921(c)(3)(C). Petitioners argue

that Clause (C) required the Board to find that the lesions observed in the CT scans would show as large opacities as on an x-ray. "We review the Board's legal conclusions *de novo*." *Morrison*, 644 F.3d at 477 (citation omitted).

A miner may establish the existence of complicated pneumoconiosis through x-ray evidence of "large opacities," autopsy or biopsy evidence of "massive lesions," or an equivalent diagnostic result reached by "other means." 30 U.S.C. § 921(c)(3); 20 C.F.R. § 718.304; *see also Dixie Fuel Co., LLC v. Dir., Off. of Workers' Comp. Programs*, 700 F.3d 878, 880 (6th Cir. 2012) (stating that this evidence may be established through medical opinions). An equivalent diagnostic result is any condition which could reasonably be expected to yield *either* large opacities on a chest x-ray *or* massive lesions in a biopsy or autopsy. *See* 30 U.S.C. § 921(c)(3)(C). The Board here found the latter. It found that Dr. Sikder observed twelve-millimeter nodules on the CT scans and accordingly diagnosed progressive massive fibrosis. Dr. Shah likewise reported twelve-millimeter opacities on the November 2018 x-ray, which Dr. DePonte reviewed, and diagnosed progressive massive fibrosis. The Board permissibly concluded that progressive massive fibrosis equates to "massive lesions" under § 921(c)(3)(B). *See Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 7 (1976) ("Complicated pneumoconiosis . . . involves progressive massive fibrosis as a complex reaction to dust and other factors . . . ."); *Perry v. Mynu Coals, Inc.*, 469 F.3d 360, 365 n.4 (4th Cir. 2006) (finding that physician's diagnosis of "progressive massive fibrosis" is "obviously taken from and is entirely consistent with [30 U.S.C. § 921(c)(3)(B)]").

Petitioners seemingly ignore the disjunctive "or" in section 921(c)(3)(C) and ask us to give x-ray evidence greater weight than other types of evidence. However, we have cautioned that x-rays are "the least accurate method of correctly diagnosing complicated pneumoconiosis," and criticized the Board for singling out x-ray evidence to the exclusion of the other evidence. *Gray,*

176 F.3d at 389–90; *see also Dixie Fuel Co.*, 700 F.3d at 880.  Our sister circuits have done the same.  *See, e.g., Island Creek Coal Co. v. Compton*, 211 F.3d 203, 208 (4th Cir. 2000) (overturning an ALJ's decision because he failed to "weigh the X-ray evidence with the medical opinion evidence"); *Penn Allegheny Coal Co. v. Williams*, 114 F.3d 22, 25 (3d Cir. 1997) (criticizing the Board for relying solely on x-ray evidence and failing to consider biopsy evidence).

Therefore, we find that the Board applied the correct standard and reached a conclusion supported by the record.

III.

For the foregoing reasons, Beech Fork's petition for review is **DENIED**.